United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 9, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-30566
_____

PROVIDENT LIFE & ACCIDENT INSURANCE CO.,

Plaintiff - Counter Defendant - Appellee,

versus

MARY ELLEN SHARPLESS, M.D.,

Defendant - Counter Claimant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Louisiana

_____

Before JOLLY, DUHÉ, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Mary Ellen Sharpless, M.D. ("Sharpless")[1] appeals from a declaratory judgment finding that a disability insurance policy issued to her by Provident Life & Accident Insurance Company ("Provident") was void from its inception. As part of that judgment, Sharpless was ordered to repay all of the benefits that she had collected under the policy, less the amount that had been paid in premiums, for a total payment of $918,577.64, plus costs. On appeal, Sharpless contends the district court erred in finding

_____

[1]Sharpless is also referred to as Mary Ellen Cory or Dr. Cory in some of the court records.

1

that: 1) her policy with Provident was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"); 2) she was not entitled to a jury trial; 3) her claims under 29 LA. REV. STAT. § 22:619 were preempted by ERISA; and 4) she made fraudulent misstatements in her policy application.

I

On August 1, 1988, Sharpless, an anaesthesiologist, was hired by Anaesthesia Research Specialists of Baton Rouge ("ASBR"), a professional medical corporation composed of five physicians -- who owned all of the corporation's shares -- and their support staff. ASBR provided two disability insurance plans. The first plan, which covered all employees (including the shareholders), was issued by Fortis Insurance Company and provided disability benefits of up to $5,000.00 per month. The second plan, which was only available to shareholding employees, was issued by Provident (the "Provident Plan") and provided disability benefits of up to $12,000.00 per month.

In January 1991, ASBR's shareholders decided to increase their benefits under the Provident Plan to $15,000.00 per month. They applied for the increased benefits in February 1991. Sharpless did not become an ASBR shareholder until March 1, 1991; however, because she had been informed she would soon be a shareholder, she filled out the policy applications for the Provident Plan in February 1991 along with the other doctors.

2

Each doctor was issued an individual policy by Provident, and ASBR added the premium amounts for that policy to the doctors' W-2 forms as salary earned. Nevertheless, all of the doctors, including Sharpless, indicated on their disability policy applications that ASBR would be paying their premiums. Both ASBR and Provident treated the policies as if they were part of a group plan: Provident gave ASBR its 10% employer-sponsored plan discount, and ASBR paid Provident a lump sum each month to cover all of the monthly premiums.

Sharpless filled out two questionnaires as part of the application for the Provident Plan. Both questionnaires asked if the applicant had ever been treated for, or ever had any known indication of, a mental or emotional disorder. Both questionnaires also asked if the applicant had ever sought help or treatment for alcohol use. The second questionnaire asked if the applicant had ever used barbiturates. Sharpless answered "no" to all of these questions. The first questionnaire explicitly stated that Provident would base the issuance of the policy on the applicant's answers to the questions. Both questionnaires were incorporated into the disability insurance policy issued to Sharpless (the "Policy"). The Policy allowed for cancellation two years after the Policy's inception, but only if the applicant had made a fraudulent misstatement in the application.

Sharpless's medical records, presented at trial, revealed that she had been hospitalized as a teenager for an overdose of barbiturates. They also showed that between 1992 and 1998, she consistently reported that she had had depressed feelings since adolescence, had seen a psychiatrist in 1984 during her previous marriage, and had begun seeing a new psychiatrist, Dr. Breeden, in January 1991 due to alcohol use.

On December 3, 1997, Sharpless voluntarily stopped practicing with ASBR due to severe depression. She applied to Provident for disability benefits and was awarded $15,000.00 per month, effective December 3, 1997. Provident does not contest that Sharpless was fully disabled under the Policy terms as of December 3, 1997, or that she continued to be so at the time of trial.

On March 3, 2000, Provident filed a declaratory judgment action in federal district court seeking both cancellation of the Policy as void since its inception, and restitution for benefits paid. Provident alleged that the Policy was void because Sharpless had fraudulently made material misstatements in her application. Sharpless denied the allegations and filed a counterclaim, alleging defamation and bad faith breach of contract. Sharpless requested a jury trial on all claims.

Initially, the district court found that the policy was not covered by ERISA, but this finding was based on an incorrect statement by an ASBR employee that the doctors were partners rather

4

than shareholders.  The district court later vacated that ruling when it became clear that the doctors were in fact shareholders. The district court went on to conclude that the Policy should be rescinded and that the benefits paid reimbursed with a credit for premiums paid.  On May 19, 2003, the court entered judgment accordingly, and Sharpless appealed.

## II

The issues we will address are:  1) whether Sharpless's Policy was governed by ERISA; 2) whether Sharpless was entitled to a jury trial; 3) whether Sharpless's claims under 29 LA. REV. STAT. § 22:619 were preempted by ERISA; and 4) whether Sharpless made fraudulent misstatements in her application.  We take these up in order.

## A

ERISA's applicability to the Policy is a factual question we review for clear error.  See Reliable Home Health Care, Inc. v. Union Central Ins. Co., 295 F.3d 505, 510 (5th Cir. 2002); FED. R. CIV. P. 52(a).

Sharpless contends that the Provident plan is exempt from ERISA because the only people covered by the plan, the shareholding doctors, were employers rather than employees.  ERISA only covers employee welfare benefit plans that are "established or maintained for the benefit of employees." Gahn v. Allstate Life Ins. Co., 926 F.2d 1449, 1451 (5th Cir. 1991); 29 U.S.C. § 1002(1).  To qualify as an employee welfare benefit plan, a plan must cover at least one

5

employee.  29 C.F.R. § 2510.3-3(b); <u>Meredith v. Time Ins. Co.</u>, 980 F.2d 352, 358 (5th Cir. 1993).

ERISA defines an employee as someone who is employed by an employer.  29 U.S.C. § 1002(6).  The Supreme Court, noting that this definition provides little guidance, held that, in the absence of textual clues, courts should look to the federal common law in order to determine who is an employee.  <u>Nationwide Mutual Ins. Co. v. Darden</u>, 503 U.S. 318, 323 and 323 n.3 (1992).[2]  As the Supreme Court recently clarified, however, here there is no need to look outside ERISA itself.  <u>Yates v. Hendon</u>, 124 S.Ct. 1330, 1339 (2004) ("ERISA's text contains multiple indications that Congress intended working owners to qualify as plan participants").

The Department of Labor's interpretation of employee status under ERISA also provides guidance in this case.  ERISA interpretations by the Department of Labor ("DOL") are given great deference.  <u>Meredith</u>, 980 F.2d at 358; <u>Robertson v. Alexander Grant & Co.</u>, 798 F.2d 868 (5th Cir. 1986).  DOL regulations specify that

---

[2]In particular, courts are to rely on the general common law of agency.  <u>Darden</u>, 503 U.S. at 323.  Among other factors to be considered in applying the right to control test are:  the skills required; the source of the instrumentalities and the tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hiring party.  <u>Id</u>.  These factors are to be considered together, with no one factor being dispositive.  <u>Id</u>.

partners who wholly own a business are not normally employees of that business under ERISA. 29 C.F.R. § 2510.3-3(b); Yates, 124 S.Ct. at 1344 ("Plans that cover only sole owners or partners and their spouses . . . fall outside [ERISA's] domain."). The same is not true, however, of multiple shareholders who wholly own a corporation. See DOL Advisory Opinion 76-67, 1976 ERISA Lexis 58 (May 21, 1976). In Advisory Opinion 76-67, the DOL explained that a plan covering only corporate shareholders was exempt from ERISA only if the company was wholly owned by one shareholder or by the shareholder and his or her spouse. Id.

Moreover, "a working owner may have a dual status, *i.e.*, he can be an employee entitled to participate in a plan and, at the same time, the employer . . . who established the plan." Yates, 124 S.Ct. at 1341-43 (also relying on DOL Advisory Opinion 99-04A, 26 BNA Pension and Benefits Rptr. 559, which clarified 29 C.F.R. § 2510.3-3(b)).

The advisory opinions, in accord with Yates, lead to the conclusion that shareholders in a multiple-shareholder corporation, such as Sharpless, are employees under ERISA.[3] The Provident Plan

---

[3]Other courts have reached similar conclusions. See Leckey v. Stefano, 263 F.3d 267, 271 (3d Cir. 2001) (shareholders were employees when corporation was wholly owned by an individual, his spouse, and his stepdaughter); Santino v. Provident Life & Accident Ins. Co., 276 F.3d 772 (6th Cir. 2001) (joint shareholder who did not either solely, or with his spouse, own all the stock of the corporation was not an employee); In Re Baker, 114 F.3d 636, 640 (7th Cir. 1997) (majority shareholder was an employee where corporation was not owned solely by shareholder or by shareholder

was further covered by ERISA as an employer-sponsored plan in which at least one employee participated, and the district court did not err in holding that ERISA governed Sharpless's Policy.

B

Whether Sharpless was entitled to a jury trial on Provident's claim for return of the amounts paid her under the Policy is a legal question that this Court reviews de novo. See Reliable Home Health Care, Inc., 295 F.3d at 510.

An ERISA restitution claim is equitable in nature and does not provide a right to a jury trial. Borst v. Chevron Corp., 36 F.3d 1308, 1323 (5th Cir. 1994); Calamia v. Spivey, 632 F.2d 1235, 1237 (5th Cir. 1980). Sharpless contends, however, that she was entitled to a jury trial because Provident's claim was legal rather than equitable.

Provident sought a judgment that the Policy was void since its inception, and that Provident was therefore entitled to a return of the money it had wrongly paid to Sharpless. It based its contention on the Policy provision that allowed Provident to void a contract in the event of a fraudulent misstatement by the insured. We agree and hold that because this action is based on a Policy provision, seeking rescission of a contract instead of monetary damages, it is an equitable action authorized by ERISA.

_____

and his spouse); McDonald v. Metz, 225 B.R. 173 (9th Cir. B.A.P. 1998) (former spouses were employees of a corporation they had wholly owned while married).

8

See <u>Borst</u>, 35 F.3d at 1323; <u>Calamia</u>, 632 F.2d at 1237. As there is no right to a jury trial in such equitable actions, the district court did not err in denying one.

C

Turning next to the preemption question, we review ERISA preemption of state law <u>de novo</u>. See <u>Frank v. Delta Airlines, Inc.</u>, 314 F.3d 195 (5th Cir. 2002). ERISA preempts state laws that "relate" to employee benefit plans. 29 U.S.C. § 1144(a); <u>Tingle v. Pacific Mutual Ins. Co.</u>, 996 F.2d 105, 108 (5th Cir. 1993). However, state laws that "regulate" insurance are exempted from ERISA preemption. <u>Id</u>.

Sharpless contends that the district court erred in finding that her state law claims under 29 LA. REV. STAT. § 22:619 were preempted by ERISA. Sharpless bases her contention on a Supreme Court opinion that was issued after the decision in this case, <u>Kentucky Assn. of Health Plans, Inc. v. Miller</u>, 123 S.Ct. 1471 (2003).

In <u>Miller</u>, the Supreme Court provided a new, simplified test for ERISA preemption. <u>Miller</u>, 123 S.Ct. at 1478.[4] Under the

---

[4] Before <u>Miller</u>, ERISA preemption was determined through a two-part inquiry. <u>Miller</u>, 123 S.Ct. at 1478. The first part of the inquiry was whether under a common-sense approach the statute in question was a statute that regulated insurance. <u>Id</u>. The second part of the inquiry was taken from the test used to determine if a statute regulated the "business of insurance" and asked whether the practice: 1) has the effect of transferring or spreading a policy holder's risk; 2) is an integral part of the policy relationship between the insurer and the insured; and 3) is

9

<u>Miller</u> guidelines, ERISA does not preempt a state statute if 1) that statute is specifically directed towards entities engaged in insurance, and 2) the statute substantially affects the risk pooling arrangement between the insurer and the insured. <u>Id</u>. The only pertinent difference between the <u>Miller</u> analysis and the previous test is that in place of the second <u>Miller</u> inquiry, the previous test asked whether the statute in question "transfers or spreads the risk from the insured to insurer." <u>Id</u>. This change, while significant in certain situations, does not affect our analysis of ERISA's preemption of § 22:619.

Section 22:619 bars insurance companies from cancelling insurance contracts because of innocent or non-material misrepresentations by the insured party. Neither party contests that § 22:619 is specifically directed towards entities engaged in insurance. We are then left to consider whether § 22:619 substantially affects the risk pooling arrangement between the insurer and the insured. <u>See</u> <u>Miller</u>, 123 S.Ct. at 1478.

This Court previously examined § 22:619 and concluded that "although [§ 22:619] does shift the burden of innocent misrepresentations (the legal risks) onto the insurer, it does not spread the risk of insurance (health) coverage for which the parties contracted." <u>Tingle</u>, 996 F.2d at 108. The <u>Tingle</u> opinion also noted that "[a]s we appreciate the term 'spreading of risk' in

limited to entities within the insurance industry. <u>Id</u>.

10

the context of an insurance policy, the risk focused upon is that risk for which the insurance company has specifically contracted to reimburse the insured." Id. at 323 n.13. Section 22:619 cannot be said to substantially affect the risk pooling arrangement when Tingle found that § 22:619 does not even address the risk for which the insurance company contracted.

Thus, we find no error in the district court's conclusion that Sharpless's § 22:619 claims are preempted by ERISA.

D

Finally we come to the merits of the district court's ruling. We review the factual findings supporting the conclusion that Sharpless made a fraudulent misstatement in her Policy application for clear error. See St. Martin v. Mobil Exploration & Prod. U.S., Inc., 224 F.3d 402, 408 (5th Cir. 2000). Federal common law governs rights and obligations stemming from ERISA-regulated plans, including the interpretation of the Policy provisions at issue here. Wegner v. Standard Ins. Co., 129 F.3d 814, 818 (5th Cir. 1997) (citing Todd v. AIG Life Ins., 47 F.3d 1448, 1452-53 (5th Cir. 1995). When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists. Id.

Sharpless contends that the district court erred in its finding that she made fraudulent misrepresentations on her Policy application. The Policy provision at issue allows for cancellation

11

due to "fraudulent misstatements" by the applicant. Under federal common law, a plaintiff claiming fraudulent misstatement must prove: 1) that the defendant made a false statement; 2) that the statement was material; 3) that the defendant knew the statement was false at the time it was made, or that it was made recklessly without any knowledge of its truth; and 4) that the false statement was made with the intent to deceive. Massachusetts Cas. Ins. Co. v. Reynolds, 113 F.3d 1450, 1455-56 (6th Cir. 1997).

The record is clear that Provident established that some of Sharpless's answers on her policy application were false, and Sharpless knew they were false at the time she made them. On her policy application, Sharpless indicated that she had never had any known indication of a mental or emotional disorder, had never sought treatment for alcohol use, and had never used barbiturates. Sharpless's medical records showed that she had, in fact, once overdosed on barbiturates in an attempted suicide and had seen a psychiatrist in 1984. Those records also showed that Sharpless consistently told her health care providers that she had sought treatment for alcohol use in January 1991, which was before she filled out the Policy application. Sharpless only contradicted the January 1991 date after Provident began its action against her.

The district court reasonably concluded that Sharpless's statements to her health care providers, when she was seeking their treatment, were more likely to reflect the truth than her later testimony. The district court's conclusion that Sharpless

knowingly made false statements is fully supported by the record, and thus is not clearly erroneous.

Further, Sharpless knew that the application questionnaires were going to be used by Provident to determine if it should issue her a disability insurance policy. The district court's conclusion that Sharpless intended to deceive was supported by the evidence.

Finally, Provident established that Sharpless's fraudulent misstatements were material to Provident's decision to issue her Policy. Provident's policy guidelines call for policy administrators to take into account all relevant information about drug and alcohol use and mental impairments. Provident's administrator testified that he would not have issued Sharpless a policy if he had known of her prior suicide attempt, her continuing history of depression, or her continuing treatment for alcohol use. The district court's conclusion that Sharpless's fraudulent misstatements are material was well-supported by the evidence.

In sum, the district court's factual findings with respect to Sharpless's fraudulent misstatements are not clearly erroneous.

                                III

For the foregoing reasons, the judgment of the district court is

                                                AFFIRMED.

13