# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60049

LINDSEY GREEN; BRENDA GREEN,

United States Court of Appeals
Fifth Circuit

**FILED**

June 11, 2014

Lyle W. Cayce
Clerk

Plaintiffs-Appellants,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

Before STEWART, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

CARL E. STEWART, Chief Judge:

Lindsey Green and Brenda Green (collectively "Plaintiffs") appeal the district court's grant of summary judgment in favor of Life Insurance of North America ("LINA") upholding LINA's denial of life insurance benefits to Plaintiffs, beneficiaries of the two policies at issue. Plaintiffs also appeal the modification of a discovery order. We AFFIRM both of these decisions.

No. 13-60049

## FACTS AND PROCEDURAL HISTORY

Joshua Green ("Green"), husband of Lindsey Green and son of Brenda Green, died while operating a boat on July 16, 2010. Around 8:20 p.m, he called his wife to say he was on his way home. When he did not arrive, she called the police. The Coast Guard found Green in his boat the next morning. He had died because of a head injury sustained when his boat struck the support legs of a landing light at Keesler Air Force Base.[1] The police report and radio log on the incident noted that Green had a blood alcohol content of .243, there were empty beer bottles and cans in the boat, he had not been using his running lights,[2] and when he had spoken to his wife he sounded intoxicated. Sunset on July 16, 2010 occurred at 7:59 p.m. and civil twilight, the point at which terrestrial objects become indistinguishable, was 8:26 p.m. The official death certificate declared the death to be accidental, occurring when Green struck a concrete piling. It listed the immediate causes of death as (1) contusions of the brain, (2) depressed skull fracture, and (3) violent impact to the top of the head. It listed as a significant other condition acute alcohol intoxication.

### A. Green's Life Insurance Policies

Plaintiffs sought to recover on two Accidental Death and Dismemberment ("AD&D") policies Green held with Life Insurance Company of North America ("LINA") through his employer, Northrop Grumman Corporation. The policies are governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). LINA is the issuer, insurer, claims administrator, and plan administrator[3] of the two policies. The

---

[1] Both parties agree the light was not lit.

[2] Both parties agree that running lights are merely navigational, indicating the size, position, or course of the boat. There is no evidence in the record that he had a spotlight on board, which would have shone light on the path in front of him.

[3] Although in the administrative record LINA disclaimed any responsibility for the plan's summary description booklet, a responsibility of the plan's administrator, LINA does not challenge that it is considered a plan administrator for these policies on appeal.

No. 13-60049

policyholder is the Trustee of the Group Insurance Trust for Employers in the Manufacturing Industry, and Northrop Grumman is the subscriber of the policy. The policies defined a "Covered Accident" as:

> [A] sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions: 1. occurs while the Covered Person is insured under the policy; 2. is not contributed to by disease, Sickness, mental or bodily infirmity; 3. is not otherwise excluded under the terms of this policy.

The policies included as a "Common Exclusion" from recovery number 8:

> [O]perating any type of vehicle while under the influence of alcohol or any drug, narcotic or other intoxicant including any prescribed drug for which the Covered Person has been provided a written warning against operating a vehicle while taking it. Under the influence of alcohol, for purposes of this exclusion, means intoxicated, as defined by the law of the state in which the Covered Accident occurred.

## B. Procedural History

LINA initially denied Plaintiffs' claims for three reasons: (1) Green's death was not a "Covered Accident" because he operated a vehicle while intoxicated; (2) Green's death was not a "Covered Accident" because he operated a boat at night without the aid of lights; and, (3) Green was legally intoxicated and the policies excluded recovery for any injury caused by operating a vehicle under the influence of alcohol or drugs. Plaintiffs appealed alleging that LINA: (1) misinterpreted Mississippi and federal law, which required foreseeability to be viewed from the standpoint of the insured; (2) misinterpreted the policy's definition of vehicle; (3) ignored Green's cause of death; and (4) relied on an invalid blood sample. After notifying Plaintiffs that

they would require an extension to address Plaintiffs' arguments, LINA denied this appeal nearly three months later.   LINA reiterated that Green intentionally operated his boat while intoxicated, making the risk of injury or death substantially certain, foreseeable, and not independent of all causes. Separately, LINA relied on the policies' exclusion of coverage for any accident involving the operation of a vehicle while intoxicated.

On June 3, 2011, Plaintiffs filed suit in federal district court seeking recovery.  Throughout the discovery process, LINA was reluctant to provide certain documents.  The magistrate judge issued an order compelling discovery but later modified it. The district court affirmed this decision.  Both parties filed motions for summary judgment. The district court granted LINA's motion for summary judgment and denied Plaintiffs'.  Plaintiffs timely appealed both the modified discovery order and grant of summary judgment to LINA.  We address each in turn.

## DISCUSSION

### A. Discovery Order

The magistrate judge reconsidered and modified the original discovery order after LINA demonstrated that the order would require a review of 25,000 claims.  The modified order required LINA to produce: (1) any policies or procedures which could have been utilized but limited to current and past policies and procedures for three years prior to the incident; and, (2) claims demonstrating LINA's interpretation of Northrop Grumman plans' intoxication exclusion for participants similarly situated to Green since 2007. The AD&D guide, policies, and manuals Plaintiffs sought had not been used since 2002 and, because outdated policies and procedures were irrelevant under ERISA, *see* 29 C.F.R. § 2560.503–1(m)(8), the magistrate judge did not order their production.  The district court affirmed this decision.

We review a district court's decision to limit discovery for abuse of discretion. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011). A district court abuses its broad discretion when its decision is based on an erroneous view of the law, but we will only vacate a court's judgment if it affected the substantial rights of the appellant. *Id.* The appellant must prove both abuse of discretion and prejudice. *Id.* We have instructed district courts to "monitor discovery closely" in ERISA cases and to limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, . . . and [*inter alia*] the importance of the discovery in resolving the issues." *Id.* at 264 (internal quotation marks and citations omitted). Given these considerations, we hold that there was no error in modifying this discovery order.

## B. The Policies

### 1. *Standard of Review*

"Standard summary judgment rules control in ERISA cases." *Cooper v. Hewlett–Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009) (internal quotation marks omitted). We review a "district court's grant of summary judgment de novo, applying the same standards as the district court." *Id.* Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When parties file cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013) (internal quotation marks omitted).

If the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms, we review a decision to deny benefits only for abuse of discretion. *Atkins v. Bert Bell/Pete Rozelle NFL*

*Player Ret. Plan*, 694 F.3d 557, 566 (5th Cir. 2012). If there is no such grant of discretion, our review is de novo. *Id.* "Whether the district court employed the appropriate standard in reviewing an eligibility determination made by an ERISA plan administrator is a question of law" that we review de novo. *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 269 (5th Cir. 2004). However, "with or without a discretion clause, a district court rejects an administrator's factual determinations in the course of a benefits review only upon the showing of an abuse of discretion." *Dutka ex rel. Estate of T.M. v. AIG Life Ins. Co.*, 573 F.3d 210, 212 (5th Cir. 2009).

Plaintiffs argue that the district court erred when it reviewed LINA's determination for abuse of discretion only. The district court relied on language in the summary plan description ("SPD") to grant LINA discretion to interpret the policy's terms. Plaintiffs argue that this was improper in light of the Supreme Court's decision in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011) and our decision in *Koehler v. Aetna Health Inc.*, 683 F.3d 182 (5th Cir. 2012). LINA contends that the plan does confer discretion when read as a whole, specifically relying on the language in both the SPD and in the "claims provisions" section of the plan. The "claims provisions" section contains a "proof of loss" subsection, which states "[w]ritten or authorized electronic proof of loss satisfactory to Us must be given . . . ." Plaintiffs respond that there is a circuit split over whether this "satisfactory to Us" language is sufficient to confer discretion and that it is not sufficient in this case.[4] *See Gross v. Sun*

---

[4] Plaintiffs also argue that LINA's conflict of interest, failure to comply with ERISA procedures, such as denying the appeal outside of the 60 day window, and per se policy against covering alcohol-related incidents demand a de novo standard of review. These arguments are unavailing. This court and the Supreme Court have been clear that a conflict of interest does not change the standard of review but affects only the amount of deference given under an abuse of discretion standard of review. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–19 (2008); *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 539 (5th Cir. 2012). The same is true for the procedural irregularities and LINA's alleged per se practices. *See Glenn*,

*Life Assur. Co. of Can.*, 734 F.3d 1, 12–13 (1st Cir. 2013) (discussing at length the circuit split on this issue); *see also Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 168 & n.3 (4th Cir. 2013) (holding that the court "now join[s] the circuits that decline to impose an abuse-of-discretion standard of review" based on this language, and therefore, disagreeing with the "minority of circuits" that have concluded that the language does confer discretion).

We need not decide this issue because even under a de novo standard of review Plaintiffs' claims are unavailing. Therefore, we assume without deciding that the standard of review for these policies is de novo.

*2. Green's Accident*

LINA determined that the circumstances of Green's death were not covered by the policies on two separate grounds: (1) the policies' exclusion precluded coverage for an accident occurring while an insured operated a vehicle while intoxicated; and (2) the accident was not a "Covered Accident" as defined by the policies because it was a foreseeable result of Green's actions. Because we conclude that LINA properly applied the policy exclusion we need not address whether the accident was a "Covered Accident" as defined by the policies.

Plaintiffs argue that this case is identical to *Firman* and that because LINA applied a per se policy excluding coverage for any death involving

---

554 U.S. at 118–19; *Firman*, 684 F.3d at 539. Further, LINA adequately refutes Plaintiffs' allegations and establishes its compliance with ERISA. To the extent Plaintiffs rely on a Tenth Circuit case, *LaAsmar v. Phelps Dodge Corp. Life Accidental Death & Dismemberment and Dependent Life Ins. Plan*, 605 F.3d 789 (10th Cir. 2010), for the proposition that a delay in deciding an appeal justifies a de novo standard of review, the reasoning from that case is inapplicable here. LINA complied with ERISA regulations for seeking an extension and informed Plaintiffs of the delay. In any event, this court rejects "arguments to alter the standard of review based on procedural irregularities in ERISA benefit determinations, such as delays in making a determination," without a showing of "potential wholesale or flagrant violations that evidence an utter disregard of the underlying purpose of the plan." *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 567 (5th Cir. 2012) (internal quotation marks omitted).

alcohol, regardless of any policy exclusions, they should be able to recover. Plaintiffs' argument misses the mark. This case is not identical to *Firman*. First, Green's plan included an explicit exclusion for alcohol-related deaths whereas the plan in *Firman* did not. The application of such an exclusion does not amount to a per se practice or abuse of discretion. Second, unlike the plan in *Firman*, Green's policy clearly defined a "Covered Accident." A major point of contention in *Firman* was that LINA interpreted "accident" to mean "unforeseeable," which the court concluded was a broader definition than necessary. 684 F.3d at 542–43. Here, the definition in the policies included the term "unforeseeable." Finally, unlike *Firman* there is evidence in addition to Green's blood alcohol content that supports the denial of benefits. This additional evidence includes the toxicologist's report and Green's actions the night of the accident, which include operating a boat at night without lights. Therefore, we conclude that *Firman* is distinguishable from this case and does not dictate the result.

Plaintiffs next argue that the exclusion is inapplicable because it requires the operation of a "vehicle" while intoxicated and "vehicle" is a term that does not unambiguously include a boat—which is what Green was operating when the accident occurred. Plaintiffs urge that "vehicle" must be defined according to Mississippi law, and because it is ambiguous, it must be construed in favor of Green. Plaintiffs note that under Mississippi law, a vehicle is something that must be used "upon a highway," and therefore, cannot include a boat. *See* Miss. Code Ann. § 63-3-103(a). Additionally, Plaintiffs assert that Mississippi also clearly distinguishes between "vehicles" and "watercrafts." *See* Miss. Code Ann. § 63-3-103(b). Finally, Plaintiffs argue that federal law recognizes that a "vessel" is not a "vehicle," and therefore, LINA's conclusion that the exclusion applies is erroneous.

"Federal common law governs rights and obligations stemming from ERISA-regulated plans, including the interpretation" of policy provisions at the heart of this dispute. *Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 641 (5th Cir. 2004).[5]  "When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists." *Id.*  We "interpret the contract language in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) (internal quotation marks omitted).  "Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured." *Id.*

Mississippi law does not apply to the interpretation of "vehicle" as utilized in Green's policies' exclusion.  The exclusion explicitly states that benefits will not be paid "for any Covered Injury or Covered Loss, which, directly or indirectly, in whole or in part, is caused by or results from the following . . . operating any type of vehicle while under the influence of alcohol . . . ."  The next sentence of this exclusion states: "[u]nder the influence of alcohol, for purposes of this exclusion, means intoxicated, as defined by the law of the state in which the Covered Accident occurred."  Contrary to Plaintiffs repeated assertions, this does not mean that Mississippi law applies to the interpretation of the word "vehicle."  Mississippi law very clearly applies to interpret "intoxicated" and not "vehicle."

---

[5] "[W]e may draw guidance from analogous state law," however, such guidance can only be used "to the extent that it is not inconsistent with congressional policy concerns." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) (internal quotation marks omitted).

We hold that the plain meaning of the word "vehicle" as used in Green's policies is unambiguous and broad enough to encompass a boat. The common and generally accepted meaning of "vehicle" is that it is "a means of carrying or transporting something." *See Webster's Third New International Dictionary* 2538 (2002);[6] *see also Black's Law Dictionary* 1693 (9th ed. 2009) (defining vehicle as "an instrument of transportation or conveyance" and "any conveyance used in transporting passengers or things by land, water, or air"). The usage of the word "vehicle" in the policies unambiguously reinforces this generally accepted meaning of "vehicle." The exclusion explicitly refers to "*any type* of vehicle," evidencing a clear intent for the broadest definition of this term to apply. (emphasis added). The general definitions section defines an "[a]ircraft" as "a vehicle." In another section the policies refer to an "Automobile" and define it extensively as "a self-propelled, private passenger motor vehicle with four or more wheels which is a type both designed and required to be licensed for use on the highway of any state or country." If the word "vehicle" was to have the interpretation Plaintiffs desire—namely as a device that may be transported on a highway—then there was no reason to include this definition for "Automobile." Simply referring to it as a "vehicle" would have sufficed. An ordinary person reading this exclusion provision in these specific policies would conclude that the term "vehicle" encompasses a boat.

Plaintiffs are correct that Mississippi and federal law define "vehicle" and "motor vehicle" differently in other contexts.[7] However, this fails to create ambiguity concerning the term "vehicle" as used in these policies. In the ERISA context, this court is not bound to construe the terms in favor of the

---

[6] Webster's cites as examples: a locomotive, airplane, and submarine. *See id.*

[7] Specifically, Plaintiffs cite *In re Greenway*, 71 F.3d 1177, 1180 (5th Cir. 1996) (per curiam), 1 U.S.C. § 4, and Miss. Code Ann. § 63-3-103(a).

insured unless there is ambiguity. *See Wegner*, 129 F.3d at 818. Because there is no ambiguity here and the plain meaning of "vehicle" includes a boat, LINA correctly interpreted "vehicle" to include a boat. Therefore, we hold that LINA properly denied coverage to Plaintiffs as Green's death fell within the policies' explicit exclusion for accidents involving the operation of a vehicle while intoxicated.

## CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's grant of summary judgment to LINA and its denial of summary judgment to Plaintiffs. We also AFFIRM the modification of the discovery order.