# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

No. 16-60231

February 21, 2017

Lyle W. Cayce
Clerk

NICOLE MABRY, as Mother and Next Friend of T.M., A Minor,

> Plaintiff - Appellant

v.

LEE COUNTY,

> Defendant - Appellee

_____

Appeal from the United States District Court
for the Northern District of Mississippi

_____

Before WIENER, CLEMENT, and HIGGINSON, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

T.M., a middle school student, was arrested after a fight on school property and taken to a juvenile detention center. As part of standard intake procedures at the center, she was subjected to a strip and cavity search. She was released from the center that same evening. All charges were eventually dropped. Nicole Mabry ("Mabry"), T.M.'s mother, brought suit against Lee County ("County") and others on T.M.'s behalf, alleging among other things that the strip and cavity search violated T.M.'s Fourth Amendment rights. The district court granted the County's motion for partial summary judgment on the Fourth Amendment issue. Mabry timely appealed. We AFFIRM.

No. 16-60231

I

The facts essential to this appeal are not in dispute. T.M. was a twelve-year old student at Tupelo Middle School. She was in a physical altercation with a fellow student on school property. Pursuant to the school's zero-tolerance policy, the school principal consulted with the Tupelo police officer assigned to be the School Resource Officer ("SRO"). Following that conversation, the SRO determined there was probable cause to arrest T.M. on charges of assault, disorderly conduct, and disruption of a school session. He called the Lee County Youth Court's judicial designee and was given authorization, based on the designee's determination of probable cause, to transport T.M. to the Lee County Juvenile Detention Center ("Center"). He then removed T.M. from school property, handcuffed her, and patted her down. No weapons or contraband were found.

Center intake procedures dictated that all juveniles processed into the Center were to be searched for contraband using a metal detecting wand and a pat down. In addition, procedures required that juveniles charged with a violent, theft, or drug offense who were to be placed into the Center's general population be subjected to a visual strip and cavity search. All juveniles brought to the Center were processed for placement in the general population unless the Youth Court specifically informed the Center that the juvenile was to be held as a "non-detainee."

Pursuant to these policies, a female corrections officer searched T.M. when she arrived at the Center. The officer first used the metal detecting wand and patted T.M. down, finding no contraband. At that point, the officer had no reason to suspect T.M. was concealing any contraband in or on her person. Because T.M. was charged with a violent offense, however, Center policy

2

No. 16-60231

required that the officer strip and cavity search T.M. In a private setting, T.M. was made to strip naked, bend over, spread her buttocks, display the anal cavity, and cough.[1] At no point did the officer touch T.M. during the search. No contraband was found. Following the search, T.M. showered, dressed, moved to a holding cell for approximately twenty minutes, and then entered the general population. She was released from the Center later that evening. No charges against T.M. were pursued.

Mabry sued on T.M.'s behalf. The County filed two separate motions for partial summary judgment. The district court granted both motions and—because neither motion was for complete summary judgment—ordered Mabry to show cause as to whether any remaining claims existed against the County. Mabry responded that no remaining claims existed, and the district court entered final judgment.

Mabry timely appealed. Her appeal is limited to a single issue: whether the district court erred in determining that Mabry failed to create a genuine issue of material fact that the Center's search of T.M. violated T.M.'s Fourth Amendment rights. We AFFIRM.

II

We review "the district court's ruling on summary judgment de novo, applying the same standard as the district court in the first instance." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to

---

[1] Courts have not always been precise in the terminology they use to describe various kinds of searches. For purposes of uniformity, we call any search in which an inmate is made to remove clothes a "strip search," and any search in which an inmate is made to remove clothes *and* allow visual inspection of the private parts a "strip and cavity search."

No. 16-60231

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III

The Fourth Amendment to the United States Constitution reads in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Because "[t]he Fourth Amendment prohibits only *unreasonable* searches," *Grady v. North Carolina*, 135 S. Ct. 1368, 1371 (2015), it has been left to courts to draw the line between reason and unreason. There are many different kinds of searches, varying in relative intrusiveness and distinguishable by context. Unsurprisingly, search and seizure jurisprudence has been patchwork, composed of a number of different tests, to be applied to different kinds of searches and in different settings.

The question presented to us is whether Mabry has shown that the County's visual strip and cavity search of T.M., who was detained for simple assault pursuant to a probable cause determination by a judicial designee, violated the Fourth Amendment. To answer, it is necessary to probe the Supreme Court's Fourth Amendment precedents to determine whether any bind us. Although there are myriad Supreme Court cases that are at least tangentially related to the issues raised here, three are especially pertinent. None is on all-fours with the facts here. We give a brief summary of each nonetheless, to properly situate our substantive analysis below in the context of governing Supreme Court case law.

A. *Bell v. Wolfish*

*Bell v. Wolfish*, 441 U.S. 520 (1979), "is the starting point for understanding" how to evaluate the reasonableness of a search at a

No. 16-60231

correctional facility. *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132 S. Ct. 1510, 1516 (2012). In *Bell*, a group of adult pretrial detainees brought a class action suit, challenging, among other things, a New York correctional facility's practice of strip and cavity searching all inmates "after every contact visit with a person from outside the institution." 441 U.S. at 558. The searches were strictly visual; inmates were not touched. *Id.* at 558 n.39.   The Court announced a holistic balancing test to be applied when determining a search's reasonableness:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559. Applying this test to the searches at issue in *Bell*, the Court "[b]alance[d] the significant and legitimate security interests of the institution against the privacy interests of the inmates," and concluded that the balance weighed in favor of the reasonableness of the searches. *Id.* at 560.

B. *Safford v. Redding*

The inmates in *Bell* were adults. Thirty years later, the Supreme Court addressed the constitutionality of strip searches of minor students by school officials on school property. *See Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009). In *Safford*, the principal of a middle school oversaw the search of a student who was required to "pull her bra out and to the side and shake it, and to pull out the elastic on her underpants, thus exposing her breasts and pelvic area to some degree." *Id.* at 369. The Court, relying heavily on prior precedent in *New Jersey v. T.L.O.*, 469 U.S. 325 (1985), held that, when

assessing the constitutionality of "searches by school officials[,] a 'careful balancing of governmental and private interests suggests that the public interest is best served'" by applying "a standard of reasonable suspicion." *Safford*, 557 U.S. at 370 (quoting *T.L.O.*, 469 U.S. at 341). In addition to having reasonable suspicion to conduct a search, the Court explained, school officials must also narrow the scope of the search such that "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* (quoting *T.L.O.*, 469 U.S. at 342). Importantly for present purposes, the Court emphasized that the Fourth Amendment's interest-balancing calculus outlined in *Bell* is necessarily different when applied to minors, in part because "adolescent vulnerability intensifies the patent intrusiveness" of a strip search. *Id.* at 375.

C. *Florence v. Board of Chosen Freeholders*

The most recent relevant Supreme Court precedent came in *Florence*, 132 S. Ct. 1510. An adult pretrial detainee challenged strip and cavity searches conducted pursuant to routine intake procedures. The Court reiterated the *Bell* balancing test but further emphasized that "a responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review." *Id.* at 1517–18 (quoting *Atwater v. Lago Vista*, 532 U.S. 318, 347 (2001)). Rather than directly applying *Bell*'s holistic balancing test, the Court applied a more deferential Fourth Amendment calculus. *See id.* at 1515.

The *Florence* Court held that "a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate

penological interests.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The Court further stressed the deference owed to correctional officials in designing search policies intended to ensure security, noting that, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response . . . courts should ordinarily defer to their expert judgment in such matters." *Id.* at 1517 (*quoting Block v. Rutherford*, 468 U.S. 576, 584–85 (1984)). While taking pains to describe and apply the long-established reasonableness framework of *Bell* and other Fourth Amendment precedent, the Court in *Florence* nonetheless set up a high hurdle for inmates challenging the constitutionality of searches. The Court concluded that, in the correctional context, the burden is on the plaintiff to prove with substantial evidence that the challenged search does not advance a legitimate penological interest.

Although stressing the importance of deference to correctional officials, the Court suggested that substantial evidence could demonstrate that a correctional strip search policy is an exaggerated response to security concerns when, compared to the facts presented in *Florence*, the need for such a policy is lower, the justification weaker, the intrusiveness higher, or an alternative, less invasive policy more feasible. Justice Kennedy's majority opinion clarified that "[t]his case does not require the Court to rule on the types of searches that would be reasonable in instance where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees. . . . The accommodations provided in these situations may diminish the need to conduct some aspects of the searches at issue." *Id.* at 1522–23. Similarly, Chief Justice Roberts stressed: "it is important for me that the Court does not foreclose the possibility of an

exception to the rule it announces." *Id.* at 1523. Justice Alito highlighted that "the Court does not hold that it is always reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population. Most of those arrested for minor offenses are not dangerous, and most are released from custody prior to or at the time of their initial appearance before a magistrate. . . . For these persons, admission to the general jail population, with the concomitant humiliation of a strip search, may not be reasonable, particularly if an alternative procedure is feasible." *Id.* at 1524 (Alito, J., concurring). Despite this cautionary language, the Court in *Florence* nonetheless made clear that the evidentiary burden rests with the plaintiff when challenging a correctional search policy. Without substantial evidence to the contrary, courts should defer to the reasonableness determinations of correctional officials.

## IV

As the district court noted, T.M.'s case "lies at the intersection" of *Safford* and *Florence*: both precedents share important similarities with the facts here, but neither is on all-fours. *Mabry v. Lee Cty.*, 168 F. Supp. 3d 940, 945 (N.D. Miss. 2016). T.M.'s case is like *Safford* in that it involves the search of a minor student, and it is like *Florence* in that the search was conducted pursuant to routine intake procedures at a correctional facility. The first question we must address, then, is whether *Florence* or *Safford*—or neither—controls in cases

when, as here, the inmate who is searched on intake into a correctional facility is a juvenile.

Only one of our sister circuits has addressed precisely this question since *Florence* was decided.[2] In *J.B. ex rel. Benjamin v. Fassnacht*, 801 F.3d 336 (3d Cir. 2015), a minor was strip and cavity searched pursuant to routine intake procedures at a juvenile detention center. The Third Circuit held that *Florence* controlled for two reasons. First, focusing on the logic underlying *Florence*, the court asserted that "[t]here is no easy way to distinguish between juvenile and adult detainees in terms of the security risks cited by the Supreme Court in *Florence*." *Id.* at 343. And, the court explained, because juveniles and adults pose the same security risks, it follows that the same constitutional test for reasonableness should apply in assessing searches meant to mitigate those risks. *See id.* at 344–45.

Second, the court in *J.B.* homed in on certain language in the *Florence* opinion that seems to indicate a broad scope of the holding, including *Florence*'s expansive definition of jail to include "other detention facilities." *Id.* at 339 (quoting *Florence*, 132 S. Ct at 1513). The court noted that this "sweeping language . . . comports with the federal definition of prison: '[A]ny Federal, State, or local facility that incarcerates or detains *juveniles* or *adults*.'" *Id.* at 347 (quoting 18 U.S.C. § 3626(g)) (emphasis added). Thus, relying on its reading of *Florence*'s substantive logic and certain passages in the opinion's

---

[2] The Sixth Circuit faced a similar situation in *T.S. v. Doe*, 742 F.3d 632 (6th Cir. 2014), but ultimately decided that case on qualified immunity grounds, and so did not make any holding as to whether *Florence* applies to searches of juveniles.

language, the Third Circuit concluded that *Florence* controls in cases involving strip and cavity searches of minors.

The County urges us to follow the Third Circuit in holding that *Florence* controls in cases involving juveniles. Mabry and her *amici* argue that *Florence* does not control when minors are involved, and that we should instead apply *Safford*'s reasonable-suspicion test or some other alternative.

In explaining its motivation for shifting the burden of marshalling substantial evidence onto plaintiffs who challenge a search's reasonableness, the Court in *Florence* stressed the deference owed to correctional officers. The reason for that deference is because courts do not have "sufficient expertise . . . to mandate, under the Constitution . . . specific restrictions and limitations." *Florence*, 132 S. Ct. at 1513. "Maintaining safety and order" in correctional facilities "requires the expertise of correctional officials." *Id.* at 1515. Consequently, "determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials." *Id.* at 1517 (internal quotation marks omitted). It is this expertise on the part of officials, and the lack thereof on the part of courts, that motivates the deferential test outlined in *Florence*.

*Florence*'s argument as to institutional competence applies with equal force to juvenile detention centers as it does to adult correctional institutions. That is, we can discern no reason why designing and implementing measures to maintain safety and order in juvenile detention centers requires any less expertise than in adult correctional facilities, nor do we see why courts are more competent to achieve the task in the juvenile context. Importantly, the persuasiveness of this point is not undermined by the fact that the actual security concerns and privacy interests implicated in the juvenile detention

center context may be different in important ways from those faced in adult correctional facilities. *See, e.g., Safford*, 557 U.S. at 375 (noting that "adolescent vulnerability intensifies the patent intrusiveness" of a search); *J.B.*, 801 F.3d at 343 (explaining that "juveniles pose risks unique from those of adults as the state acts as the minor's de facto guardian . . . during a minor's detention period"). Nevertheless, we read *Florence* to mean that, in the correctional context—whether juvenile or adult—courts, which are not experts, should still defer to officials who are. The logic underlying *Florence*'s deferential test thus compels the conclusion that the deference given to correctional officials in the adult context applies to correctional officials in the juvenile context as well.

V

Having concluded that the burden allocation of *Florence* applies, we now determine whether Mabry has put forward substantial evidence demonstrating that the search policy that the Center applied to T.M. was not "reasonably related to legitimate penological interests." *Florence*, 132 S. Ct. at 1515. Making that determination requires us to ask whether Mabry has pointed to "substantial evidence in the record to indicate that the officials have exaggerated their response." *Id.* at 1517 (quoting *Block*, 468 U.S. at 584–85).

Mabry acknowledges that, under *Florence*, it is her burden to prove the policy's unreasonableness with substantial evidence. Yet, in her brief, Mabry focuses her argument exclusively on the threshold question of whether *Florence* should apply to T.M.'s case. She makes no real effort to present evidence that the Center's search policy is exaggerated, unnecessary, or

irrational in any way.[3] Accordingly, she effectively concedes that she cannot prevail under *Florence*'s test.

Mabry's effective concession on this point is fatal to her claim, even though we note that, at oral argument, counsel for the County could not point to even one instance in which contraband was found via the strip and cavity search that could not have been found through use of the metal detecting wand and pat-down. Furthermore, the County has given no explanation for the Center's blanket policy of placing all incoming juvenile pretrial detainees into its general population as a default matter, absent some special indication from the Youth Court to the contrary. Indeed, at no point in its brief does the County point to *any evidence whatsoever* legitimating *any* components of the Center's intake procedures, including the search policy.

Despite the paucity of the County's defense of the Center's policies and procedures, Mabry failed to enter evidence into the record below making a substantial showing that the Center's search policy is an exaggerated or otherwise irrational response to the problem of Center security. Mabry's argument must therefore be rejected.

VI

The district court's ruling is AFFIRMED.

---

[3] At oral argument, Mabry's counsel explicitly conceded that he had not attempted to make any argument applying the *Florence* test.

12