## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

———————

No. 16-11660

———————

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2017

Lyle W. Cayce
Clerk

ROBERT RAMIREZ,

       Plaintiff–Appellant,

v.

UNITED OF OMAHA LIFE INSURANCE COMPANY,

       Defendant–Appellee.

————————————

Appeal from the United States District Court
for the Northern District of Texas

————————————

Before SMITH, OWEN, and HIGGINSON, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Robert Ramirez traveled to West Texas and contracted a fungal infection that ultimately resulted in the removal of one of his eyes. He sought benefits under an accidental death and dismemberment and life insurance policy provided by his employer. The insurer, United of Omaha Life Insurance Company (United), denied the claim, and Ramirez filed suit. The district court granted summary judgment in favor of United, holding that Ramirez's infection was not an "Accident" within the meaning of the policy. Ramirez has appealed. We affirm.

**I**

We assume that the facts are as Ramirez has presented them. He was employed by MS International, Inc. and traveled to West Texas twice in

No. 16-11660

November 2013. Following these trips, Ramirez developed a fungal infection in his right eye that was diagnosed as coccidioidomycosis, also known as valley fever. Medical providers determined that contact with a West Texas fungus called Coccidioides caused the infection. The infection led to progressive loss of vision in Ramirez's eye, and physicians ultimately removed that eye in October 2014. For purposes of United's summary judgment motion, the parties assume that Ramirez contracted coccidioidomycosis by inhaling fungal spores on his West Texas work trips.

He was covered under an employee benefits insurance plan, which is subject to the Employee Retirement Income Security Act (ERISA),[1] and the plan included an "Accidental Death and Dismemberment and Life Insurance Policy" (the policy) issued by United. Ramirez submitted a claim for the loss of his eye. The policy provides that "[t]he [Accidental Death and Dismemberment] Benefit is paid if an employee is injured as a result of an Accident, and that Injury is independent of Sickness and all other causes." The policy specifies that it "will not pay for any loss which . . . does not result from an Accident." The policy defines Accident, Injury, and Sickness as follows:

> **Accident** means a sudden, unexpected, unforeseeable and unintended event, independent of Sickness and all other causes.
> Accident does not include Sickness, disease, bodily or mental infirmity or medical or surgical treatment thereof, bacterial or viral infection, regardless of how contracted. Accident does include bacterial infection that is the natural and foreseeable result of an accidental external bodily Injury or accidental food poisoning.
>
> **Injury** means an accidental bodily injury which requires treatment by a Physician. It must result in loss independently of Sickness and other causes.

---

[1] 29 U.S.C. § 1001, *et seq.*

2

No. 16-11660

**Sickness** means a disease, disorder or condition, which requires treatment by a Physician.

United denied Ramirez's claim, stating in part that "the loss of sight was not due to an Accident as defined by the policy independent of Sickness and all other causes." Ramirez filed an administrative appeal, and United upheld the claim denial. Ramirez then filed this suit pursuant to 29 U.S.C. § 1132(a)(1)(B).

## II

"Standard summary judgment rules control in ERISA cases."[2] We review a grant of summary judgment de novo, applying the same standards as the district court.[3] Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] The facts of this case are undisputed, and both parties agree that a de novo standard of review applies in this case.

We note that in suits brought under 29 U.S.C. § 1132(a)(1)(B), district courts generally review the denial of disability-benefits claims de novo when the administrator or fiduciary does not have discretionary authority to determine eligibility for benefits or to construe the terms of the plan.[5] But if the benefits plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the denial of benefits is reviewed for an abuse of discretion.[6] The district court was

---

[2] *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009) (quoting *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004)).

[3] *Mabry v. Lee Cnty.*, 849 F.3d 232, 234 (5th Cir. 2017).

[4] FED. R. CIV. P. 56(a).

[5] *See Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 137 (5th Cir. 2016) (first citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); then quoting *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir.2009)). *But see Ariana M. v. Humana Health Plan of Tex., Inc.*, 854 F.3d 753 (5th Cir. 2017), *reh'g en banc granted*, 869 F.3d 354 (5th Cir. July 10, 2017) (considering the proper standard of review in ERISA cases).

[6] *Id.*

uncertain of the proper standard of review, twice referencing an arbitrary or capricious standard.  However, even applying a de novo standard, the district court correctly construed the policy as applied to the facts of this case.

## III

The parties' dispute focuses on whether Ramirez's fungal infection was a "Sickness" and whether the loss of his eye was the result of an "Accident" as defined by the policy.  Federal common law governs the interpretation of all ERISA-regulated plan provisions.[7]     Under federal common law, courts construing ERISA plan provisions "are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists."[8]  "Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are [courts] compelled to apply the rule of *contra proferent*[e]*m* and construe the terms strictly in favor of the insured."[9]

The policy uses the term "Sickness" in three provisions pertinent to Ramirez's claim:  The policy states that "Accident" does not include "Sickness"; requires that an "Accident" be "independent of Sickness"; and requires that an "Injury" "result in loss independently of Sickness."  The definition of "Accident" further provides that the term does not include "disease, bodily or mental infirmity or medical treatment thereof."

## A

We conclude that, under ordinary principles of contract interpretation, a fungal infection such as coccidioidomycosis falls squarely within the definition of "Sickness" and that the loss of an eye as a result of such a fungal infection

---

[7] *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 331 (5th Cir. 2014).

[8] *Id.* (quoting *Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 641 (5th Cir. 2004)).

[9] *Id.* (quoting *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997)).

is not an "Accident" within the meaning of the policy.  The district court did not err in concluding that Ramirez was not entitled to benefits.

The policy does not define disease, disorder, or condition, so the words are given their ordinary meaning.[10]  Coccidioidomycosis comes within the commonly understood meaning of a "disease, disorder or condition, which requires treatment by a Physician."  Additionally, sources such as Black's Law Dictionary define disease as "[a] deviation from the healthy and normal functioning of the body" and "[a]ny disorder; any depraved condition."[11]

The Centers for Disease Control, cited by both parties, supports this everyday usage of the policy terminology, describing coccidioidomycosis as a "type[] of fungal disease" that can make people "sick."[12]  Additionally, both parties cite a portion of a report from Dr. Martin Shapiro, a board-certified ophthalmologist, stating: "To be perfectly clear, Mr. Ramirez suffered a sickness (called Coccidiomycosis or 'Valley Fever') that he acquired through fungal spore inhalation which eventually disseminated to his right eye." Ramirez relies on this sentence as proof that the infection caused the loss of sight and only contests the portion of Dr. Shapiro's report that states the injury was not an "Accident" under the policy.  He does not challenge Shapiro's description of the infection as a sickness.  Under the ordinary and generally accepted meaning of the policy's language, coccidioidomycosis is a disease

---

[10] *Green*, 754 F.3d at 332.

[11] *Disease*, BLACK'S LAW DICTIONARY 567 (10th ed. 2014); *see also Disease*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 648 (2002) ("[A]n impairment of the normal state of the living animal or plant body or of any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors . . . to specific infective agents . . . to inherent defects of the organism . . . or to combinations of these factors : SICKNESS, ILLNESS").

[12] CTRS. FOR DISEASE CONTROL, VALLEY FEVER AND THE EXPANDING GEOGRAPHIC RANGE OF *COCCIDIOIDES* (2016).

No. 16-11660

within the policy's definition of "Sickness." Loss of sight from this fungal infection was not "independent of Sickness," and it is not covered by the policy.

**B**

Ramirez contends that coccidioidomycosis is not a "Sickness." He asserts that coccidioidomycosis is instead an "Accident" independent of "Sickness" and that it caused his loss of sight. Ramirez's arguments are unpersuasive.

Ramirez asserts that the policy removes only bacterial and viral infections from the definition of "Accident" and therefore that "Accident" must include other microbial sources of infection, including fungus. Ramirez interprets "Accident" as including all infections that cause injury other than "bacterial or viral infection."

The policy provides that "Accident" "does not include Sickness, disease, bodily [] infirmity or medical [] treatment thereof, bacterial or viral infection, regardless of how contracted." Ramirez relies on an implication for his position that a fungal infection comes within the term "Accident," because the definition of "Accident" does not expressly mention fungal infection but does expressly provide that a bacterial or viral infection cannot constitute an "Accident." However, other terms, such as a "bodily or mental infirmity" and "Sickness," encompass a fungal infection, and therefore, the provision regarding bacterial or viral infections cannot be read to remove fungal infections by implication from those terms.

Ramirez asserts that a fungal infection is an "Accident" covered by what he describes as the policy's "carve-back" provision. That provision brings within coverage a "bacterial infection that is the natural and foreseeable result of an accidental external bodily injury" and "accidental food poisoning," even though they would otherwise be excluded as "Sickness," "disease," or "bacterial or viral infection[s]." However, neither the policy's language nor its structure indicates that this provision applies beyond these two specific occurrences.

No. 16-11660

Ramirez contends that the policy must cover a fungal infection because a fungal infection is analogous to food poisoning. Fungal infections, like food poisoning, are unpredictable in contraction and effect and require medical care. The policy expressly defines an "Accident" as including "accidental food poisoning." However, to construe the accidental death and dismemberment policy as Ramirez urges us to do would mean that the flu, strep throat, fungal pneumonia, and many other bacterial, viral, and fungal infections would also be analogous conditions because they too are unpredictable and require medical care. The ordinary meaning of the policy language provides no support for including fungal infection in the provision that includes accidental food poisoning within the definition of "Accident."

Ramirez argues that the definition of "Sickness" must be limited to preexisting sicknesses. He asserts that to conclude otherwise means that virtually all injuries could be considered a "Sickness" if the employee requires any treatment from a physician prior to the actual dismemberment. But the definitions of "Accident," "Injury," and "Sickness," when considered as a whole, make clear that if an employee were to suffer the near loss of a limb, for example, and were eventually to lose the limb after prolonged treatment by a physician, there would be coverage. The policy's extension of coverage does not turn on whether the death or loss was caused by a condition that arose after the inception of the policy. Rather, the nature and cause of the loss determine whether there is coverage.

## C

The *contra proferentem* rule does not apply because the policy terms are unambiguous. Therefore, we need not construe the policy against United.

If the policy language is ambiguous, then the court should construe the policy against the drafter, United, under the rule of *contra proferentem*. We may consider Texas law in this federal-common-law case to determine the

7

applicable federal common law.[13]   "Whether an insurance contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole . . . ."[14]  "A contract is unambiguous if it can be given a definite or certain legal meaning."[15]  "Ambiguity does not arise because of a 'simple lack of clarity,' or because the parties proffer different interpretations of the contract."[16]   But a contract is ambiguous if "it is subject to two or more reasonable interpretations after applying the pertinent canons of construction."[17] However, the policy language is unambiguous "after applying ordinary principles of contract interpretation."[18]

## D

Ramirez vaguely asserts that the sudden contact with the fungus itself is an "Accident" that the policy should cover.  Even if we were to agree that the acute inhalation of the fungal spores was "a sudden, unexpected, unforeseeable and unintended event," the resulting loss of his eye was not "independent of Sickness" as defined in the policy.

*       *       *

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[13] *See Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) ("[W]e may draw guidance from analogous state law in ascertaining the applicable federal common law . . . to the extent that it is not inconsistent with congressional policy concerns." (brackets, citations, and quotation marks omitted).

[14] *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005) (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)).

[15] *McLane Foodservice, Inc. v. Table Rock Rests., LLC*, 736 F.3d 375, 378 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)).

[16] *Id.* (quoting *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)).

[17] *Id.* (citing *Webster*, 128 S.W. 3d. at 229).

[18] *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 331 (5th Cir. 2014) (quoting *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997)).