# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20358

United States Court of Appeals
Fifth Circuit

**FILED**

May 11, 2015

Lyle W. Cayce
Clerk

HUMANA HEALTH PLAN, INCORPORATED,

Plaintiff - Appellee

v.

PATRICK NGUYEN,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, WIENER, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Defendant-appellant Patrick Nguyen ("Nguyen") appeals from the district court's order granting summary judgment in favor of plaintiff-appellee Humana Health Plan, Inc. ("Humana"). For the reasons explained below, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS

Nguyen is a participant in the API Enterprises Employee Benefits Plan (the "Plan"), an ERISA-governed employee welfare plan established by API Enterprises, Inc. ("API"). API entered into a Plan Management Agreement ("PMA") with Humana, through which Humana agreed to serve as "Plan

Manager" and to provide various administrative services to the Plan. Two features of the PMA are particularly relevant here.

First, the PMA made clear that API or the Plan's administrator would make all discretionary decisions about the Plan's administration and management, and that Humana "act[ed] as an agent of [API] authorized to perform specific actions or conduct specified transactions only as provided in this Agreement." API agreed to give Humana written notice of "the Plan's management policies and practices," and Humana agreed that it "operat[ed] within a framework of the Plan's management policies and practices authorized or established by the Plan Administrator, in accordance with the provisions of the Plan." While the PMA authorized Humana to conduct its affairs according to its normal operating procedures, it stated that Humana must abandon its normal procedures if "they are inconsistent with the Plan's management policies or practices."[1] The PMA authorized Humana to hire "subcontractors and/or counsel" of its choosing to perform certain services. But the parties agreed that API would reimburse Humana for fees paid to outside counsel only if the "legal fees incurred by [Humana] [were] attributable to a request, direction, or demand by [API], the Plan Administrator, or the Employer."

Second, the PMA stated that Humana would provide "'Subrogation/Recovery' services . . . [for] identifying and obtaining recovery of claims payments from all appropriate parties through operation of the

---

[1] The dissent states that the PMA authorized Humana to follow its *own* procedures when performing subrogation and recovery services. Article II of the PMA expressly stated that where API and Humana's policies and procedures conflicted, API's policies and procedures controlled. Unlike the other articles containing general terms, Article II did not contain a clause stating that later, specific terms controlled more general terms. Thus even the provision cited by the dissent does not show that API relinquished control over Humana when Humana performed subrogation and recovery services.

subrogation or recovery provisions of the Plan." The PMA defined subrogation and recovery services to include: "(1) Investigation of claims and obtaining additional information to determine if a person or entity may be the appropriate party for payment"; "(2) Presentation of appropriate claims and demands for payment to parties determined to be liable"; "(3) Notification to Participants that recovery or subrogation rights will be exercised with respect to a claim"; and "(4) Filing and prosecution of legal proceedings against any appropriate party for determination of liability and collection of any payments for which such appropriate party may be liable." API agreed to pay Humana "30% of all amounts recovered" under the subrogation and recovery services provision.

According to the district court's opinion, Nguyen was injured in an automobile accident in April 2012. Between April 2012 and April 2013, the Plan paid $274,607.84 to cover Nguyen's resulting medical expenses. Nguyen "recovered from a third party settlement funds of $255,000 for damages sustained in the accident." Nguyen argued, the district court accepted, and Humana does not contest that the third party settlement funds were paid by Nguyen's own insurance provider.

The Plan notified Humana that it did not intend to seek reimbursement from Nguyen, because the Plan's governing documents did not allow recovery from a beneficiary's uninsured motorist policy payout. Humana determined that it was free to disregard the Plan's instruction. It sued Nguyen in district court, seeking, *inter alia*, an injunction prohibiting Nguyen from disposing of the insurance payout and an "equitable lien to enforce ERISA and the terms of the Plan." Nguyen deposited the disputed funds into the court registry and filed

3

## No. 14-20358

a counterclaim against Humana.[2] The parties then filed cross-motions for summary judgment. The district court granted Humana's motion, denied Nguyen's motion, and entered judgment in favor of Humana. Nguyen appeals the district court's order and judgment.

### STANDARD OF REVIEW

"Standard summary judgment rules control in ERISA cases." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (internal quotation marks omitted). "We review a district court's grant of summary judgment de novo, applying the same standards as the district court." *Id.* (internal quotation marks omitted). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

The decision below turned in part on the district court's interpretation of the PMA.[3] "[W]e review de novo the interpretation of a contract, including any questions about whether the contract is ambiguous." *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511-12 (5th Cir. 2014).

### DISCUSSION

The district court held that Humana was an ERISA fiduciary as a matter of law. In its appeal, Nguyen argues that Humana is not an ERISA fiduciary, and thus, that Humana does not have the statutory right to seek relief under 29 U.S.C. § 1132(a)(3).

---

[2] Humana also brought conversion and tortious interference claims, but these claims are not before us on appeal.

[3] The provisions of the PMA are not the terms of the Plan per se, but it may "provide elements of a plan by setting out rules" through which the Plan will be administered. *Pegram v. Herdrich*, 530 U.S. 211, 223 (2000).

4

No. 14-20358

I.

Section 1132(a)(3) provides that any "participant, beneficiary, or fiduciary" has the right to seek an injunction and other "appropriate equitable relief" when necessary to stop violations of ERISA's regulatory provisions or the terms of the ERISA plan. As relevant here, a third party service provider is an ERISA fiduciary "to the extent . . . [it] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of [the plan's] assets," or it "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i), (iii). In short, "[a] fiduciary within the meaning of ERISA must be someone acting in the capacity of manager [or] administrator." *Pegram*, 530 U.S. at 222.

"We give the term fiduciary a liberal construction in keeping with the remedial purpose of ERISA." *Reich v. Lancaster*, 55 F.3d 1034, 1046 (5th Cir. 1995) (internal quotation marks and alteration omitted). But the broad definition of fiduciary is still constrained in at least two ways. First, third-party service providers can serve as ERISA fiduciaries in one capacity and non-fiduciaries in another. *See Pegram*, 530 U.S. at 225-26 (explaining that "persons who provide services to an ERISA plan" may operate with a conflict of interest, so long as they comply with fiduciary duties while acting in fiduciary capacity). Thus, when courts evaluate whether a party is an ERISA fiduciary, they must focus on the specific role the purported fiduciary played as relevant to the claim at hand. *See id.* at 226 (holding that, "[i]n every case charging breach of ERISA fiduciary duty, . . . the threshold question is

5

No. 14-20358

. . . whether that person was acting as a fiduciary . . . when taking the action subject to complaint").[4]

Second, not every act that could be described as "discretionary" in the general sense makes the actor a fiduciary under ERISA. For almost forty years, the Department of Labor has maintained that "a person who performs purely ministerial functions," such as the "[p]reparation of reports concerning participants' benefits" or "[m]aking recommendations to others for decisions with respect to plan administration," is not an ERISA fiduciary. 29 C.F.R. § 2509.75-8, at D-2.[5] This is because

> a person who performs purely ministerial functions . . . for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons . . . does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, . . . and has no authority or responsibility to do so.

*Id.* The distinction between fiduciaries and ministerial agents applies even to "an attorney, accountant, actuary or consultant who renders legal, accounting, actuarial or consulting services to an employee benefit plan," even though these parties exercise independent, professional judgment when acting on behalf of an ERISA plan. *Id.* § 2509.75-5, at D-1; *see also Reich*, 55 F.3d at 1049 (stating that "professionals . . . who provide necessary services to ERISA plans" do not become fiduciaries simply by "play[ing] influential roles by virtue of the

---

[4] We recognize that *Pegram* addressed whether a defendant was an ERISA fiduciary. But ERISA only contains one definition of fiduciary, and nothing in ERISA's civil enforcement provisions suggests that we should apply one fiduciary test when determining whether a party is a proper fiduciary-plaintiff, and another when determining whether a party is a proper fiduciary-defendant.

[5] Interpretive bulletins from the Department of Labor receive "*Skidmore* deference," *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), as described in *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). *See Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 297 (5th Cir. 2000) (applying *Skidmore* deference to IRS bulletin).

expertise that they possess or the capacities in which they act"). "[A]ttorneys, accountants, actuaries and consultants performing their usual professional functions will ordinarily not be considered fiduciaries, [unless] the factual situation in a particular case" shows that the professional serves as a manager or administrator of the plan. 29 C.F.R. § 2509.75-5, at D-1.

The Department of Labor's interpretations of § 1002(21)(A) are even more persuasive when one considers their similarity to the common law of trusts, which is the "source" of ERISA's fiduciary duty provisions. *See Pegram*, 530 U.S. at 224. Under the common law of trusts, a trustee can delegate ministerial acts to third-parties. George Gleason Bogert & George Taylor Bogert, *The Law of Trusts & Trustees* § 555, at 114-15 (rev. 2d ed. 1980). If a reasonable businessperson would "employ an outside expert" to perform a given function, the courts treats those functions as ministerial. *Id.* at 116-17. "[E]mploy[ing] an attorney to collect choses in action running to the trust," *id.* § 556, at 142, is viewed as a ministerial function. *See id.* § 555-56.[6] The trustee may entrust such duties "to realtors, lawyers, brokers, and others, not because there is a total lack of discretion and judgment involved but because such entrustment is common business practice in similar nontrust affairs." Bogert, *supra*, § 555, at 117.

Under the Department of Labor's interpretations—as under the common law of trusts—the power to collect claims on behalf of the ERISA plan is not discretionary *per se*. There are at least two relevant factors that tip the scales between a ministerial employee and a fiduciary. First, the court must consider whether the plan administrator has set up "a framework of policies, interpretations, rules, practices and procedures" for the third-party to follow.

---

[6] A "chose in action" is a "proprietary right in personam, such as a debt owed by another person." Black's Law Dictionary 294 (10th ed. 2014).

No. 14-20358

*See* 29 C.F.R. § 2509.75-8, at D-2; *see also* Bogert, *supra*, § 556, at 142. If the plan administrator has established such a framework, the court must consider whether the plan administrator is actively supervising the agent's performance of the assigned task. *See* 29 C.F.R. § 2509.75-8, at D-2; *see also* Bogert, *supra*, § 556, at 142. One hallmark of active supervision is a requirement that the third-party submit a recommendation to the plan administrator for approval before the third-party takes further action. If the plan administrator is actively supervising the claims agent, then the fact that the agent is empowered to initiate legal action for the plan does not prove the agent is a fiduciary. *See* 29 C.F.R. § 2509.75-5, at D-1.

Accordingly, in considering whether the district court erred when it determined as a matter of law that Humana is an ERISA fiduciary under § 1132(a)(3), we focus on the specific role that Humana undertook regarding subrogation and recovery services. And we ask whether API provided a framework of policies and procedures to guide Humana, and supervised Humana as it executed its task.

II.

A.

The district court erred in determining that Humana is an ERISA fiduciary for two reasons. First, the district court's interpretation of the PMA is not persuasive. The district court focused on the subrogation and recovery clause and determined that its broad language[7] gave Humana independent power to investigate and prosecute claims, even over the Plan's objections. But the relevant language merely defines the range of potential disputes covered by the contract; it says nothing about who has the right to finally decide

---

[7] The PMA gives Humana responsibility for the "[i]nvestigation of claims," and for "[f]iling and prosecut[ing] . . . legal proceedings against any appropriate party."

8

whether to investigate or pursue a claim.[8] Thus, even considered in isolation, the subrogation and recovery services clause does not show that Humana had discretion over the Plan or its assets. Reading the subrogation and recovery clause as part of the entire PMA raises additional questions about the district court's interpretation. *See Indem. Ins. Co. of N. Am. v. W & T Offshore, Inc.*, 756 F.3d 347, 351 (5th Cir. 2014) (explaining that courts "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless"). For example, the district court failed to explain how the PMA's various provisions describing Humana as the Plan's agent, operating under the Plan's policies and procedures, informed its interpretation of the subrogation and recovery services clause.

Second, even if we interpreted the PMA to give Humana broad power, the district court failed to explain why Humana is not a ministerial agent. Humana's various duties outlined in the subrogation and recovery clause describe the tasks performed by many law firms and collections agencies.[9] And the mere fact that Humana serves as the Plan's legal or collections agent is insufficient to show that Humana was the Plan's fiduciary, unless specific facts show that Humana exercised discretion as described in § 1002(21)(A)(i) and (iii). *See* 29 C.F.R. § 2509.75-5, at D-1; *see also, Nieto v. Ecker*, 845 F.2d 868, 870 (9th Cir. 1988),[10] *cited with approval in Reich*, 55 F.3d at 1049-50

---

[8] By making clear that the contract covers a broad range of potential claims, the PMA protects both parties. Without such a broad definition, the Plan could assign lucrative claims to other third-parties, while Humana could refuse to pursue unprofitable claims.

[9] We list these duties in the "Facts and Proceedings" section above.

[10] In *Nieto*, the plaintiff accused an attorney hired by the plan of "fail[ing] to collect . . . plan assets." *Id.* at 870. The Ninth Circuit rejected this argument, holding that "[u]nder [that] rationale anyone performing services for an ERISA plan—be it an attorney, an accountant, a security guard or a janitor—would be rendered a fiduciary insofar as he exercised some control over trust assets and through negligence or dishonesty jeopardized

(explaining that "attorney was not fiduciary absent evidence that he exercised authority over plan other than by usual professional functions"); *cf. Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 709 (7th Cir. 1999) (holding that person was ERISA fiduciary because plan had *assigned* legal right to reimbursement, and "[b]y virtue of the assignment," the attorney obtained "broader power than that of a lawyer hired to handle a claim, or of an ordinary collection agent").

We hold that the subrogation and recovery clause does not show that Humana is an ERISA fiduciary. Accordingly, we hold that the district court erred when it determined that Humana was an ERISA fiduciary based on the language of that clause. Because the district court based its decision on its interpretation of the subrogation and recovery clause, we have not had to consider other evidence that might show whether Humana exercised actual, decision-making authority over the Plan or its assets. *Cf. Musmeci v. Schwegmann Giant Super Mkts., Inc.*, 332 F.3d 339, 351 (5th Cir. 2003) (explaining that this court uses "functional approach" to determine whether purported fiduciaries exercise discretionary control over ERISA plans); *Hatteberg v. Red Adair Co. Emps.' Profit Sharing Plan*, 79 F. App'x 709, 716 (5th Cir. 2003) (per curiam) (explaining that "factual matter" showing alleged fiduciary's actual role are "key"). Because we reverse and remand on statutory standing grounds, we do not decide whether the district court erred on the merits.

## B.

We agree with the dissent that a third-party service provider may be an ERISA fiduciary even if the service provider possesses only "*some* discretionary

---

those assets." *Id.* at 870-71. The *Nieto* Panel "[found] no basis for expanding the meaning of fiduciary in this fashion[.]" *Id.* at 871.

authority." But we disagree with the dissent's suggestion that *Reich* somehow limited the definition of ministerial activities to include only benefits determinations. As we noted above, the Department of Labor has stated that attorneys "performing their usual professional functions" are not fiduciaries, and has described persons "[m]aking recommendations to others for decisions with respect to plan administration," who operate "within a framework of policies, interpretations, rules, practices and procedures made by other persons," as "ministerial" employees. 29 C.F.R. § 2509.75-5, at D-1; *id.* § 2509.75-8, at D-2. Reading these interpretive guidelines together, we see no reason why collections agents cannot be ministerial employees, so long as they operate under an ERISA plan's framework of policies and procedures, and the plan administrator supervises the agent's activities.

We do not hold, as the dissent suggests, that a third-party service provider must have final decision-making authority to be an ERISA fiduciary. We focused on final decision-making authority because that was a factor the district court considered below. Questioning whether a party has final decision-making authority is simply one way of asking whether the Plan administrator was actively supervising Humana.

We also disagree with the dissent that our reasoning is circular. It is of course true that, by holding that Humana was the Plan's fiduciary, the district court impliedly held that Humana was not a ministerial employee. Our point is that, even if the district court interpreted the PMA to give Humana fairly broad powers, the proper analysis was not at an end without considering the factors, discussed above, which the Department of Labor has stated are relevant in determining whether third-party agents are ministerial employees. Nothing in the district court's opinion suggests that the court considered those factors.

11

No. 14-20358

Humana may be able to adduce facts showing that API never set out a framework of policies and procedures as promised, or that it did not supervise Humana's collection activities. But the PMA alone does not show either failure. Until Humana adduces at least some evidence showing that API failed to guide and supervise its operations, Humana cannot show that it has the right to seek relief under § 1132(a)(3).

### III.

In his notice of appeal, Nguyen stated that he was appealing both the district court's grant of summary judgment in Humana's favor, and the district court's denial of summary judgment in his favor. But Nguyen does not sufficiently address the district court's failure to grant his motion for summary judgment in his appellate brief. Accordingly, Nguyen has waived that issue. *See, e.g.*, *Heimlich v. First Bank N.A.*, 80 F. App'x 947, 949 (5th Cir. 2003) (per curiam).

### CONCLUSION

For the reasons explained, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion, beginning with a reexamination of the issue of Humana's standing.

12

No. 14-20358

WIENER, Circuit Judge, dissenting:

I respectfully dissent in the firm conviction that the record evidence, as presented to the district court on summary judgment, compels affirmance of its holdings that (1) Humana is a fiduciary with statutory standing to bring an action under 29 U.S.C. § 1132(a)(3) on behalf of the Plan, and (2) Humana lawfully exercised its discretion, as authorized by the Plan, to recover the funds that Nguyen had received by virtue of underinsured motorists insurance.

## I. Standing

As noted in the majority opinion, Humana is designated as the Plan Manager for API's ERISA health benefits plan. The PMA states:

> [Humana] will provide 'Subrogation/Recovery' services (in addition to routine application of the coordination of benefits provisions of the Plan) for identifying and obtaining recovery of claims payments from all appropriate parties through operation of the subrogation or recovery provisions of the Plan.
> (a) Subrogation/Recovery services will be provided by the Plan Manager following its normal procedures and such services may be performed by subcontractors and/or counsel selected by [Humana].[1]

Three points here. First, the PMA distinguishes Humana's express discretionary authority to initiate and conduct subrogation and recovery services from its "routine application" of benefits functions—the type of activity

---

[1] The implication of Footnote 1 to the panel majority's opinion is based on flawed logic: Even if API's policies and procedures might be deemed to trump those of Humana in the final analysis, that does not mean that Humana does not possess discretion—and thus fiduciary status—in the normal course of administering subrogation and recovery services under the express provisions of the Plan. Moreover, the panel majority fails to acknowledge that Section 2.1's statement that "the Plan Manager operates within a framework of the Plan's management policies and practices" is followed by sections containing limiting language: "Accordingly, *except* as may otherwise be *expressly provided herein*, [Humana] is not a . . . fiduciary . . . .[and] [*e*]*xcept* with respect to *duties expressly assumed hereunder*, [Humana] is not responsible for maintaining the Plan in compliance with ERISA . . ."

No. 14-20358

considered "ministerial" and thus insufficient to support a finding of fiduciary status.[2]    Second, the PMA recognizes that in Humana's performance of subrogation and recovery services, it will "follow[] [*Humana's*] normal procedures"—not those of API—another hallmark of discretion.[3]    And, third, the PMA gives Humana the option—discretion—to select its own subcontractors and counsel to assist in performing subrogation and recovery services that it conducts on behalf of the Plan.

Moreover, the PMA contains a descriptive list of discrete activities that constitute the "Subrogation/Recovery" services that Humana is authorized to provide in its discretion:

> (1) Investigation of claims and obtaining additional information to determine if a person or entity may be the appropriate party for payment,
> (2) Presentation of appropriate claims and demands for payment to parties determined to be liable,
> (3) Notification to Participants that recovery or subrogation rights will be exercised with respect to a claim, and
> (4) Filing and prosecution of legal proceedings against any appropriate party for determination of liability and collection of any payments for which such appropriate party may be liable.

The scope of these services and the discretion inherent in the way that Humana may choose to perform them further compels the conclusion that it is

---

[2] *See Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir. 1995) (citing *Kyle Rys. v. Pac. Admin. Servs. Inc.*, 990 F.2d 513, 516 (9th Cir. 1993)).

[3] *Cf. id.* (recognizing that "[a]n entity which assumes discretionary authority or control over plan assets will not be considered a fiduciary if that discretion is sufficiently limited by a pre-existing framework of policies, practices, and procedures" (alteration in original) (quoting *Useden v. Acker*, 947 F.2d 1563, 1575 (11th Cir. 1991)) (internal quotation marks omitted)).

vested with discretionary authority.[4]  The other plan documents in the record, *viz.*, the NCD and SPD—which we review *in pari materia* with the PMA—lend further support to the conclusion that Humana is a fiduciary of the Plan.[5]

Examine first the NCD, which only Nguyen contends constitutes the Plan.[6]  The "Claims Cost Management" section of the NCD states: "Humana retains a percentage of recovery on all cases they work . . . . Humana will pay for any legal expenses *we / Humana* incur based on Humana's *decision* to retain legal counsel," and "[o]nce the Plan pays, *we* [Humana] have a contractual/equitable right to request money back from the responsible appropriate party or their insurance carrier."[7]

---

[4] *See, e.g.*, *W.E. Aubuchon Co. v. BeneFirst, LLC*, 661 F. Supp. 2d 37, 52–53 (D. Mass. 2009) (listing "investigation of subrogation claims" as an activity requiring "the exercise of substantial discretion").

[5] *See, e.g., Cataldo v. U.S. Steel Corp.,* 676 F.3d 542, 552 (6th Cir. 2012) (reviewing plan documents to ascertain whether the union qualified as an ERISA fiduciary); *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 472–73 (7th Cir. 2007) (reviewing a series of contracts between the client and pharmaceutical benefits manager to determine whether the manager's obligations rendered it an ERISA fiduciary); *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 64 (2d Cir. 2006) (relying on the summary plan description's allocation of responsibilities to conclude that the plan's administrator was a fiduciary under § 1002(21)(A)(iii)).

[6] The NCD is actually nothing more than a questionnaire—a 396-part instrument that "Humana [used] to draft the Summary Plan Description for the Plan and to administer benefits under the Plan during the period prior to the delivery of a final Summary Plan Description."  Like many a questionnaire, the NCD contains check-off boxes that describe a number of optional plan provisions from among which API could (and did) pick and choose only those that it wanted included in the Plan.  Significantly, the record indicates that the NCD evanesced when the 2012 SPD became effective, permanently supplanting the NCD.

[7] Emphases supplied.  The NCD spells out the Subrogation/Recovery provision: "Subrogation allows the Plan to 'stand in the shoes of the covered person and collect money from the responsible appropriate party' . . . . Reimbursement allows the Plan, by a contractual right, to recover the money the Plan paid on behalf of the covered person, when benefits are paid and the covered person recovered monetary damages from the responsible appropriate party. This can be by settlement, judgment or other manner."  Accordingly, Humana seeks reimbursement from Nguyen because he has already obtained funds from the responsible appropriate party or parties, *viz.*, his insurance company, an underinsured motorist, the insurance company or companies covering that motorist, or some combination thereof.

Turn next to the SPD, the instrument that Humana insists constitutes the Plan. Not surprisingly, the SPD tells the same story as does the NCD, i.e., that Humana is accorded discretion to pursue subrogation and reimbursement on behalf of the Plan: "This Plan shall be repaid the full amount of the covered expenses it pays from any amount received from others for the *bodily injuries* or losses which necessitated such *covered expenses*." The provisions of the SPD that accompany this declaration set out Humana's "Right to Collect Needed Information," as well as each Plan participant's "Duty to Cooperate in Good Faith":

> *You* must cooperate with Humana and when asked, assist Humana by . . . . [p]roviding information about other insurance coverage and benefits, including information related to any bodily injury or sickness for which another party may be liable . . . . and [] [p]roviding information <u>Humana requests to administer this Plan</u>.
>
> *You* are obliged to cooperate with Humana in order to protect this Plan's recovery rights . . . . *You* will do whatever is necessary to <u>enable Humana to enforce this Plan's recovery rights</u> and will do nothing after loss to prejudice this Plan's recovery rights . . . . Failure of the *covered person* to provide Humana such notice or cooperation . . . will be a material breach of this Plan . . . .[8]

Read *in pari materia*, as they must be, the PMA, NCD, and SPD all identify *Humana* as the entity vested with discretionary responsibility to pursue subrogation and recovery of claims on behalf of the Plan.

The majority opinion raises two principal objections to the district court's determination that Humana is a fiduciary to the extent that it is charged with conducting subrogation and recovery services on behalf of the Plan: (1) The

---

[8] Underlining emphases supplied.

PMA defines the range of potential disputes covered by the contract, but does not make clear that Humana has the ultimate authority to decide whether to investigate or pursue a claim; and, (2) the district court failed to explain why Humana's responsibilities as outlined in the subrogation and recovery clause are not merely ministerial in nature.

Consider first the majority opinion's statement that the PMA "says nothing about who has the right to *finally* decide whether to investigate or pursue a claim,"[9] leading it to conclude that the district court erred in holding that Humana is an ERISA fiduciary. Although final decision-making authority can be persuasive evidence that an entity is a fiduciary, neither § 1002(21)(A) nor our case law holds that the converse is true, i.e., that an entity must possess "final" authority to qualify as a fiduciary of an ERISA plan.[10] Rather, "[t]o be fiduciaries, such persons must exercise discretionary authority and control that amounts to *actual* decision making power."[11] This principle is illustrated by *American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of the United States*, wherein we held that "[the Plan Administrator]'s fiduciary status was *not* diminished by the trustees' *final* authority to grant or deny claims or approve investments."[12]

---

[9] Emphasis supplied.

[10] *See Reich*, 55 F.3d at 1047 (citing *Am. Fed. of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S.*, 841 F.2d 658, 663 (5th Cir. 1988)).

[11] *Id.* at 1049 (emphasis supplied). This does not require a history of decision-making; the scienter doctrine is not applicable. Rather, the authority to make actual decisions suffices.

[12] *Am. Fed. of Unions*, 841 F.2d at 663 (emphasis supplied). The panel majority makes much of the purported similarities between § 1002(21)(A) and ministerial functions as defined by the common law of trusts. I urge the district court on remand not to be distracted by the panel majority's smoke screen of resorting to the common law of trust and trustees. Several decades of evolving ERISA jurisprudence demonstrate a dramatic divergence from that beginning—ERISA fiduciaries and their duties have become *sui generis*. *See Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) ("We recognize . . . that we are to apply common-law trust standards bearing in mind the special nature and purpose of employee benefits plans." (internal quotation marks and citation omitted)). More to the point, both common law

"The term fiduciary includes those to whom *some* discretionary authority has been delegated."[13]  The record evidence makes clear that, at a minimum, the PMA accords Humana some "discretionary authority," even if not final authority, to conduct subrogation and recovery efforts on behalf of the Plan. Although the panel majority concludes that "considered in isolation, the subrogation and recovery services clause does not show that Humana had discretion over the Plan or its assets," relying on the purported absence of language in the PMA assigning Humana final decision-making authority, this analysis fails to acknowledge the PMA's straightforward language that Humana "will provide 'Subrogation/Recovery' services . . . for identifying and *obtaining* recovery of claims payments from all appropriate parties."[14] And, although the panel majority defends their position by claiming that "[q]uestioning whether a party has final decision-making authority is simply one way of asking whether the Plan Administrator was actively supervising Humana," this leads down yet another path: If the determinative factor is whether API was "actively supervising" Humana, rather than whether the PMA accorded Humana final decision-making authority, the panel majority should ground its analysis thusly.  And, I must add, Nguyen adduced no

---

trustees and ERISA fiduciaries might well employ legal counsel, CPAs, actuaries or the like to provide "ministerial functions," but that is in no way comparable to the relationship between API and Humana in this case.  It was Humana, one of the largest (if not the largest) providers of group healthcare plans in the country—both ERISA and non-ERISA—that created and provided the Plan for API from provisions that API selected in a questionnaire, expressly reserving, among other things, Humana's furnishing and performing the most "pro-active" subrogation and recovery services—as expressly selected by API.  Thus it was Humana, not API, that "set up" the framework of policies, interpretations, rules, practices, and procedures for it to follow.

[13] *Am. Fed. of Unions*, 841 F.2d at 663 (emphasis supplied). I do not suggest, as the panel majority implies, that *Reich* limits ministerial functions to benefit determinations; rather, my point is that *Reich* contemplates that a third-party manager need not possess absolute or final authority to qualify as an ERISA fiduciary—keeping in mind that our precedent requires that we construe the term "liberally."

[14] Emphasis supplied.

credible evidence that API actively supervised Humana's provision of subrogation and reimbursement services on behalf of the Plan.[15]

Consider next the panel majority's criticism of the district court for failing to explain why the duties outlined in the PMA are not ministerial in nature, observing that they resemble the tasks performed by law firms and collections agencies. But this criticism is circular and thus self-defeating: By ruling that Humana's responsibilities are discretionary in nature, the district court's inescapable corollary implication is that Humana's duties were *not* ministerial; they cannot be both.[16]

One final point. The panel majority states that, on remand, "Humana may be able to adduce facts showing that API never set out a framework of policies and procedures as promised, or that it did not supervise Humana's collection activities. But the PMA alone does not show either failure." I acknowledge that Humana, as the moving party on summary judgment, had the initial burden of adducing evidence that establishes its standing to sue

---

[15] The panel majority further criticizes the district court for failing to address language in the PMA describing Humana as the Plan's agent. But, this criticism does not account for the PMA's permissive language that "[Humana] *may* act as an agent of [API] to perform specific actions or conduct specific transactions . . . ." (Emphasis supplied). And, as observed in Footnote 1, the panel majority fails to acknowledge that the same article providing that Humana "may" act as an agent contains limiting language that "*except* as may otherwise be *expressly provided herein*, [Humana] is not a . . . fiduciary . . . [and] [*e*]*xcept* with respect to *duties expressly assumed hereunder*, [Humana] is not responsible for maintaining the Plan in compliance with ERISA . . . ." (Emphases supplied).

[16] Although the panel majority defends its reasoning by claiming that it only suggests that the district court's analysis was incomplete because it should have considered the factors contained in Department of Labor interpretive bulletin, 29 C.F.R. § 2509.75-5, before ruling in favor of Humana, I have located no case law that holds or even suggests that the district court is obligated to do so in every instance involving a question of ERISA fiduciary standing. Especially when, as here, the relevant plan documents identify Humana as the entity responsible for recovering subrogation and reimbursement on behalf of the Plan, and Nguyen has adduced no credible evidence suggesting otherwise, working through the factors contained in 29 C.F.R. §2509.75-5 is simply repetitive.

under § 1132(a)(3).[17]   But, "once the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the nonmoving party to come forward with competent summary judgment evidence establishing the existence of a material factual dispute."[18]  If evidence existed that API actively supervised Humana, or that Humana operated solely within API's framework of policies, it was Nguyen's burden to adduce such evidence in his opposition.   Instead, Nguyen presented only an affidavit prepared by API's Human Resources Director, Ms. Amy Manuel, in which her testimony contradicted the plain terms of the PMA as well as those of the Plan.[19]  Remanding the case for Humana to adduce the *absence* of evidence that would establish its standing represents a fishing expedition with no end.

As the record evidence compels the conclusion that Humana has discretion to pursue subrogation and reimbursement on behalf of the Plan, I would affirm the district court's summary judgment that (1) Humana is an ERISA fiduciary by virtue of its discretion to seek subrogation and reimbursement on behalf of the Plan, and (2) Humana therefore has standing to bring this action.[20]

## II.  Merits

The merits of this case are not addressed in the majority opinion because it remands for further consideration of the threshold issue of standing.  As I would affirm Humana's standing, however, I briefly address the merits of the

---

[17] *See Coleman v. Champion Int'l Corp./Champion Forest Prods.*, 992 F.2d 530, 533 (5th Cir. 1993) (noting that party seeking to establish standing under § 1132 must satisfy statutory definitions).

[18] *Clark v. America's Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

[19] It bears noting that Ms. Manuel works under Nguyen's father, who is the CEO of API, a 100% family-owned company.

[20] The court may affirm summary judgment on any basis raised in the district court that is supported by the record.  *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014) (citing *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)).

case. At issue is whether the terms of the Plan support Humana's efforts to recover, on behalf of the Plan, the funds that Nguyen received by virtue of underinsured motorists insurance.

Continuing to rely on the NCD only, Nguyen contends that it shields him from Humana's recovery, pointing to Ms. Manuel's affidavit. In her affidavit, Ms. Manuel, who also serves as Plan Administrator, avers that API interprets the Plan to bar recovery of any payment that a Plan participant receives by virtue of his own insurance policy. On appeal, Nguyen asserts that Ms. Manuel's interpretation is consistent with the NCD, which, he contends, limits the Plan's right of reimbursement and subrogation to recovering from the "responsible appropriate party or his insurance carrier"—who, insists Nguyen, could never be a Plan participant or his insurance carrier because a participant could not be responsible for injuring himself.[21]

Although the parties dispute which document constitutes the Plan, neither they nor I dispute that Ms. Manuel, as the Plan Administrator, is vested with discretionary authority to interpret the Plan. And, when an ERISA health benefits plan vests the plan administrator with discretionary authority to construe its terms, courts review such administrator's denial of benefits for abuse of discretion.[22] The same principle applies to a plan's

---

[21] Nguyen's "logic" suffers from a flawed syllogism: Although the record does not make clear whether Nguyen recovered the funds from his underinsured motorists insurance policy or from the tortfeasor, or some from each, the verified complaint states that "Nguyen settled his claims relating to the April 14, 2012 accident with responsible third parties for approximately $275,000.00," and Nguyen admitted to that in his Answer. The parties later stipulated and agreed that Nguyen would preserve $255,000 in settlement proceeds that he "received in connection with the injuries [he] suffered"; and he states in his appellate brief that he "secured funds from his underinsured motorist policy provider." As the Reimbursement/Recovery provisions of the Plan expressly cover proceeds received pursuant to a Plan participant's underinsured motorists insurance policy, any inconsistency in the summary judgment record on this point is not material.

[22] *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 652 (5th Cir. 2009) (citing *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001)). As noted in the majority opinion, standard summary judgment rules control in ERISA cases, meaning we review a district

assertions of rights to reimbursement and subrogation.[23] This means that, under *de novo* review, the plan administrator's decision is assessed on appeal "from the same perspective as did the district court, and we directly review the Plan's decision for an abuse of discretion."[24]

Courts apply a two-step process to determine whether an ERISA plan administrator's interpretation constitutes an abuse of discretion. They first consider whether that interpretation is legally correct; if so, the inquiry ends. If deemed legally *incorrect*, the court then considers whether the interpretation is also an abuse of discretion and thus reversible. To determine whether an administrator's interpretation is legally correct, the court evaluates several factors: (1) whether the administrator gives the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) whether any unanticipated costs would result from different interpretations of the plan.[25] As noted, Ms. Manuel's interpretation would prohibit the Plan from seeking reimbursement from Nguyen's underinsured motorist recovery: "The terms of the API Employee Benefits Plan do not allow a claim for subrogation or reimbursement from an uninsured or underinsured motorist policy, nor any other policy of insurance secured by the Plan participant."

---

court's grant of summary judgment *de novo* and apply the same standards as the district court.

[23] *See Sunbeam-Oster Co. Grp. Benefits Plan for Salaried & Non-Bargaining Hourly Emps. v. Whitehurst*, 102 F.3d 1368, 1373 (5th Cir. 1996).

[24] *Cooper*, 592 F.3d at 651 (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems. Inc.*, 168 F.3d 211, 214 (5th Cir. 1999)) (internal quotation mark omitted).

[25] *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638 (5th Cir. 1992) (citing *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d 53, 56 (5th Cir. 1990)).

No. 14-20358

But, Ms. Manuel's interpretation is directly contradicted by the plain language of the NCD,[26] which states: "Reimbursement allows the Plan, by contractual right, to recover the money paid on behalf of the covered person, when benefits are paid and the covered person recovers monetary damages from the responsible appropriate party." Here, Nguyen recovered monetary damages on the basis of underinsured motorists insurance. The NCD does not define the term "responsible appropriate party," but when we give the words of that term their plain and ordinary meanings, as we are required to do, only one conclusion makes sense: That term includes a Plan participant's own insurers, not just those of third parties.[27]

Moreover, even if we were to determine that the term "responsible appropriate party" is ambiguous (which I would not), we would be bound to construe the term as closely as possible to the SPD,[28] which states:

> The Plan shall be repaid the full amount of the covered expenses it pays from any amount received from others for the *bodily injuries* or losses which necessitated such *covered expenses*. Without limitation, 'amounts received from others' specifically includes, but is not limited to . . . underinsured motorists, 'no-fault' and automobile med-pay payments or recovery from any identifiable fund

---

[26] I assume for the sake of argument, as did the district court, that the NCD constitutes the Plan despite evidence in the record that the NCD was supplanted by the 2012 SPD.

[27] Courts interpret ERISA plans "in an ordinary and popular sense as would a person of average intelligence and experience." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) (quoting *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1452 n.1 (5th Cir. 1995)) (internal quotation marks omitted); *see also U.S. Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1549 (2013) ("Courts construe ERISA plans, as they do other contracts, by looking to the terms of the plan as well as to other manifestations of the parties' intent." (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)) (internal quotation marks omitted)).

[28] Although the plan text, and not the plan summary, ultimately controls the plan administrator's obligations, our precedent holds that (1) ambiguous plan language be given a meaning as close as possible to what is said in the plan summary, and (2) plan summaries be interpreted in light of the applicable statutes and regulations. *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012) (citations omitted).

regardless of whether the *beneficiary* was made whole.[29]

Thus, the SPD expressly confirms that amounts recoverable from others on behalf of the Plan include payments to members of the Plan from underinsured motorists insurance—the exact type of payment that Nguyen received but is now attempting to shield from recovery by Humana for the benefit of the Plan.

The only conclusion that I can draw from all of this is that, on its face, Ms. Manuel's interpretation directly contradicts the plain terms of the NCD (and the other plan documents, including the SPD) and is therefore incorrect as a matter of law. And, even though a legally incorrect interpretation like Ms. Manuel's does not automatically constitute an abuse of discretion, when, as here, an administrator's interpretation flies in the face of the express and unambiguous terms of the Plan, it does indeed constitute an abuse of discretion.[30] As such, we must disregard her interpretation entirely. Thus, relying on the plain language of the NCD as incorporated in the SPD, I would hold that these terms create an equitable lien in favor of the Plan against Nguyen's underinsured motorists recovery.

## III. Conclusion

Finally, a few thoughts on the "brooding omnipresence" overarching this dispute that we simply cannot ignore. Nguyen is the son of API's CEO, who is Ms. Manuel's superior. I take judicial notice of the fact that the Nguyen family

---

[29] Underlining emphasis supplied.

[30] *See Wildbur*, 974 F.2d at 638 ("Although the fact that an administrator's interpretation is not the correct one does not in itself establish that the administrator abused his discretion, '[w]hen [his] interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior.'" (alterations in original) (quoting *Batchelor v. Int'l Bhd. of Elec. Workers Local 861 Pension & Ret. Fund,* 877 F.2d 441, 445 (5th Cir. 1989))).

owns 100% of the stock of API, and employs only around 180 persons.[31]  The Plan covered and paid the medical expenses that Nguyen incurred as a result of an automobile accident, to the tune of about a quarter-million dollars. Nguyen subsequently received a second, virtually identical payout by virtue of underinsured motorists insurance.  Despite the plain language of the PMA, the NCD, and the SPD—*each* of which empowers Humana to recover such payouts (as well as other types), up to the amount of covered expenses previously paid by the Plan—Nguyen, like Ms. Manuel, baldly and self-servingly (but incorrectly) denies that Humana, acting on behalf of the Plan, is entitled to do so.[32]  Moreover, relying on the affidavit prepared by Ms. Manuel, Nguyen insists that the Plan may not recover funds that he received pursuant to underinsured motorists' insurance.

Stated simply, I am convinced beyond cavil that the record evidence compels the conclusion that Humana not only has discretion to pursue subrogation and reimbursement on behalf of the Plan and thus has standing, but that the Plan is entitled to recover the sums obtained by Nguyen by virtue of underinsured motorists insurance, particularly when his retention of that sum would constitute nepotistic double-dipping at the expense of the Plan.[33]  I am firmly convinced that reversing and remanding today for a redetermination of both standing and the merits—with predictably the same results—merely prolongs the resolution of this dispute, which I conclude has already been

---

[31] *See* FED. R. EVID. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[32] I acknowledge that Humana is entitled to retain a portion of the amounts it recovers via subrogation and recovery on behalf of the Plan.

[33] That the *pater familias* who runs the family-owned business would support (if not direct) the efforts of his minions to obtain a tax-free windfall of a quarter-million dollars for a family member at the expense of his company's faceless insurers is not surprising.  But it is nevertheless wrong and—more to the point of this case—violative of both the letter and the spirit of the contracts that govern the relationship between the parties.

correctly decided by the district court.  These are the reasons why I respectfully DISSENT.