# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 26, 2019

Lyle W. Cayce
Clerk

No. 18-20616
Summary Calendar

DEO G. SHANKER,

>    Plaintiff - Appellant

v.

UNITED OF OMAHA LIFE INSURANCE COMPANY,

>    Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-2481

Before DAVIS, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:*

    Deo Shanker appeals the district court's grant of summary judgment in favor of United of Omaha Life Insurance Company ("United") on his long-term disability ("LTD") claims. For the reasons set forth below, we AFFIRM the judgment of the district court.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20616

## I.  Background

Shanker was President of Intracare Behavioral Health Foundation ("Intracare").  United was Intracare's insurer.  United issued an insurance policy (the "Policy") to Intracare providing that employees like Shanker would be eligible for LTD benefits if they became "Disabled due to an Injury or Sickness, while insured under the Policy."  The Policy defines "Disabled" in relevant part to mean: "[B]ecause of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which [you are] prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis . . . ."  In turn, "Material Duties" are defined as "the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified" and include "the ability to work for an employer on a full-time basis."  Finally, "Regular Occupation" is defined as "the occupation You are routinely performing when Your Disability begins."  The definition then notes:

> Your regular occupation is not limited to Your specific position . . . but will instead be considered to be a similar position or activity based on job descriptions included in the most current edition of the U.S. Department of Labor Dictionary of Occupational Titles (DOT).  We have the right to substitute or replace the DOT with another service or other information that We determine to be of comparable purpose, with or without notice.  To determine Your regular occupation, We will look at Your occupation as it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a specific location, or in a specific area or region.

In March 2015, Shanker suffered a heart attack.  He then underwent open-heart quadruple bypass surgery.  He applied for LTD benefits in June 2015.  In so doing, he reported that his job's physical requirements were "walking, climbing, standing, lifting, driving, [and] sitting."  He also stated

that the only travel his position required was car travel between his home and office.

Shanker also submitted findings from his cardiologist, Dr. Sanjaykumar Patel who indicated that Shanker should not lift twenty-five pounds, drive for long periods of time, stand for longer than thirty minutes, or be exposed to fumes or hot or cold weather. He further noted that Shanker, in an eight-hour work day, could stand and sit only for up to two hours each and could walk only for one hour.

In September 2015, Patel responded to a letter from United seeking an update on Shanker's condition by indicating that Shanker had "no limitations." But he updated his response two weeks later with an addendum stating that Shanker could not lift twenty-five pounds, stand for long periods of time (defined as thirty minutes), drive, or be exposed to fumes or hot or cold weather.[1]

United hired outside vocational consultant Patricia A. Thal to determine whether Shanker could perform his Regular Occupation. Thal concluded that Shanker's job was best represented in the DOT as "President." She stated: "The DOT describes this occupation as requiring a sedentary physical demand level with occasional reaching, handling, and fingering."[2] Thal determined Shanker's position would involve both "sedentary and light physical demand levels." Light work entailed, among other things, "[e]xerting up to 20 pounds

---

[1] In contrast, Shanker's neurosurgeon informed United that "from a neurosurgery standpoint, Mr. Shanker is medically stable and cleared, with no restrictions." Shanker concedes that his disability claim is based only on his alleged physical, not mental, impairments.

[2] Thal also consulted the Standard Occupation Classification/Occupational Information Network ("SOC/O*Net"), which indicated that chief executives "[d]etermine and formulate policies and provide overall direction of companies . . . [and] [p]lan, direct, or coordinate operational activities at the highest level of management with the help of subordinate executives and staff managers."

of force occasionally." Thal further noted that Shanker's position required "[f]requent to constant sitting"; "[o]ccasional to frequent standing"; and "[o]ccasional walking, reaching, handling, and fingering." She concluded that Shanker would have ample job opportunities for the position of President at both the sedentary and light physical demand levels.

United then denied Shanker's request for LTD benefits on the grounds that he was not "Disabled." Shanker appealed. Less than two weeks later, Dr. Patel examined Shanker again and concluded that he was unable to lift twenty-five pounds or stand for long periods of time (thirty minutes), had limited driving abilities, and could not be exposed to fumes or hot or cold weather.

United retained Dr. Philip J. Podrid in connection with Shanker's administrative appeal. Dr. Podrid submitted a medical record review to United. He concluded Dr. Patel's recommendations that Shanker "needs to avoid heat, cold, and fumes" and "should not lift more than 25 lbs." appeared reasonable. But he also stated that "nothing in the records supplied . . . support[ed]" Dr. Patel's conclusions that Shanker could not stand for more than thirty minutes and could drive only for limited periods of time. He opined that "Shanker [did] not have any ongoing cardiac or neurological problems that would necessitate any limitations or restrictions on his activities." He thus concluded that Shanker was "capable of working full time at a level of medium activity."

United upheld its denial of Shanker's claim. It decided that "the medical records do not support [the claim that] Mr. Shanker had ongoing restrictions or limitations that would prevent him from performing his occupation on a full time basis beyond . . . the end of [the relevant time period preceding availability of benefits]."

No. 18-20616

Shanker sued United in state court, seeking a declaratory judgment that he was entitled to LTD benefits. United removed the case to federal court under 28 U.S.C. § 1331 (as well as diversity jurisdiction).[3] Shanker then filed an amended complaint asserting claims for wrongful denial of benefits under ERISA and for declaratory relief under Texas and federal law. United moved for summary judgment.

The district court granted United's summary judgment motion. It concluded that Shanker could "clearly return to work at his previous occupation." Shanker appealed.

## II.    Standard of Review

We review a district court's grant of summary judgment *de novo*. *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014). The movant is entitled to summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(a)).

We recently held that we review "ERISA denials involving non-discretionary plans" *de novo* "when the denial is based on a factual determination." *Ariana M. v. Humana Health Plan Tex., Inc.*, 884 F.3d 246, 255–56 (5th Cir. 2018) (en banc). We still review ERISA-denial legal determinations *de novo*. *See id.* at 247–48. An ERISA claimant bears the initial burden of demonstrating coverage. *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993). We interpret ERISA policies similarly to any other insurance contract. *See Green*, 754 F.3d at 331.

---

[3] We conclude that the district court had federal question jurisdiction and that we have appellate jurisdiction under 28 U.S.C. § 1291.

No. 18-20616

## III.    Discussion

Shanker first argues that the district court erred in granting summary judgment because Dr. Patel's and Dr. Podrid's medical opinions on Shanker's physical limitations contradicted each other.  He also claims the district court gave Dr. Podrid's conclusions greater weight than Dr. Patel's findings.  We disagree.

Even if we accept Dr. Patel's conclusions at face value, the limitations he identified do not make Shanker "Disabled" as defined in the Policy.  Dr. Patel concluded that Shanker could not lift twenty-five pounds or stand for long periods of time (defined as thirty minutes), could engage in only limited driving, and could not be exposed to fumes or hot or cold weather.  None of these limitations makes Shanker unable to perform the tasks "Regular Occupation" involves.  We thus conclude that no genuine dispute of material fact exists regarding whether Shanker is "Disabled" as defined by the Policy.

Shanker next claims that the Policy's definition of "Regular Occupation" is internally contradictory and thus ambiguous. We again disagree. The Policy defines "Regular Occupation" as "the occupation You are routinely performing when Your Disability begins."  The remaining explanation does not contradict this definition and does not make the Policy internally contradictory.  The Policy's definition of "Regular Occupation" is not ambiguous.

Finally, Shanker argues that the Policy's definition of "Regular Occupation" is illusory because it permits United to rely on job descriptions outside the DOT without notice.  "A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (per curiam). Relying on alternative job descriptions outside the DOT does not give United license to discontinue its performance or rely on fanciful or ridiculous

6

descriptions.  *See id.*   No genuine fact issue exists regarding whether the Policy's definition of "Regular Occupation" is illusory.

AFFIRMED.