# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 18, 2022

Lyle W. Cayce
Clerk

No. 20-10994

JAMES W. NEWSOM,

*Plaintiff—Appellee*,

*versus*

RELIANCE STANDARD LIFE INSURANCE COMPANY,

*Defendant—Appellant*.

CONSOLIDATED WITH

No. 21-10519

JAMES W. NEWSOM,

*Plaintiff—Appellee*,

*versus*

RELIANCE STANDARD LIFE INSURANCE COMPANY,

*Defendant—Appellant*.

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-1446

No. 20-10994
c/w No. 21-10519

Before Higginbotham, Stewart, and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

This is an Employee Retirement Income Security Act (ERISA) case. Lereta, LLC maintained an ERISA-governed benefits plan that provided short-term disability (STD) and long-term disability (LTD) to its employees, including James W. Newsom. Reliance Standard Life Insurance Company issued the policies that funded these benefits and served as the benefits claims administrator. Newsom filed this suit following Reliance's determination that he was ineligible for LTD benefits. The parties agreed to a trial upon submission of documentary evidence but disagreed upon the issues properly before the district court. The district judge entered an order in favor of Newsom, both finding that he was eligible for LTD benefits and awarding them. Reliance appealed.

We affirm the judgment of the district court as to Newsom's eligibility for LTD benefits and alleged date of disability. But we vacate the judgment as to Newsom's entitlement to LTD benefits and remand with instructions for the district court to remand Newsom's claim to the administrator for further proceedings consistent with this opinion.

**I.**

In 2017, Newsom worked as a software architect for Lereta, where he had been employed for 23 years. He had health problems dating back to 1999, including chronic fatigue syndrome, fibromyalgia, depression, and attention deficit hyperactivity disorder. By September 2017, his health deteriorated to the point that he could no longer work a 40-hour week. Lereta reduced Newsom's scheduled work week to 32 hours (eight hours per day, Monday through Thursday), which was still considered full time. But Newsom was unable consistently to work even a full 32-hour week. He was last scheduled

No. 20-10994
c/w No. 21-10519

to work 32 hours the week of October 16–20, 2017.  Thereafter, Lereta placed Newsom on part-time status, scheduling him for less than 30 hours per week. Newsom continued to work part time until January 30, 2018, when he became unable to work at all.

On February 22, 2018, Newsom submitted an Initial Statement of Claim for STD benefits to Reliance.  Reliance did not receive that paperwork, so he resubmitted it on March 23, 2018.  On the claim form, Newsom listed his last day of work as January 30, 2018, and noted that he was "first unable to work because of [his] disability" on January 29, 2018.  Newsom's treating physician likewise indicated that Newsom became "continuously unable to work" on January 29, 2018.  However, Newsom's physician also estimated that he would be able to return to work by August 1, 2018.  Lereta indicated on the claim form that Newsom had worked four days per week for seven hours per day (28 hours/week) before he stopped working altogether.

Based on this information, Reliance initially denied Newsom's STD claim, referencing January 31, 2018, as the date of loss and noting that Lereta indicated Newsom had been working only 28 hours per week prior to that date, meaning he did not qualify as a full-time active employee and thus did not qualify for benefit coverage.  Citing the termination language in the STD policy, Reliance explained that Newsom was no longer "eligible" for coverage because he was not working "full time" prior to becoming disabled.

Certain provisions of the applicable Reliance policies[1] are particularly pertinent to Newsom's claim and Reliance's evaluation of it, as they set forth who was eligible for benefits and defined covered disabilities:

---

[1] The provisions are excerpted from Reliance's LTD policy.  Reliance's STD policy is substantially similar; however, its definition of "Partially Disabled" is distinct from that in the LTD policy, in that the STD policy defines the term as "the Insured is

No. 20-10994
c/w No. 21-10519

ELIGIBLE CLASSES: Each active, Full-time employee of
LERETA, . . . effective November 1, 2015, as amended through
January 1, 2018, except any person employed on a temporary
or seasonal basis . . . .

. . .

"Full-time" means working for you for a minimum of 30 hours
*during a person's regular work week.*

. . .

"Totally Disabled" and "Total Disability" mean, that *as a
result of an Injury or Sickness:*

> (1) during the Elimination Period and for the first 24
> months for which a Monthly Benefit is payable, an
> Insured cannot perform the material duties of his/her
> Regular Occupation;

>> (a) "Partially Disabled" and "Partial Disability"
>> mean that *as a result of an Injury or Sickness* an
>> Insured is capable of performing the material
>> duties of his/her Regular Occupation on a part-
>> time basis or some of the material duties on a full-
>> time basis. An Insured who is Partially Disabled
>> will be considered Totally Disabled, except
>> during the Elimination Period;

>> (b) "Residual Disability" means being Partially
>> Disabled during the Elimination Period. Residual
>> Disability will be considered Total Disability;
>> and

> (2) after a Monthly Benefit has been paid for 24 months,
> an Insured cannot perform the material duties of Any
> Occupation. We consider the Insured Totally Disabled
> if due to an Injury or Sickness he or she is capable of only

---

unable to perform the material duties of his/her own job and is under the regular care of a
Physician."

No. 20-10994
c/w No. 21-10519

> performing the material duties on a part-time basis or
> part of the material duties on a full-time basis.
>
> . . .
>
> TERMINATION OF INDIVIDUAL INSURANCE: The
> insurance of an Insured will terminate on . . . the date the
> Insured ceases to meet the Eligibility Requirements . . . .

(Emphasis added). Critically for this case, the policies did not define "regular work week."

Relying on these policy provisions, Newsom appealed Reliance's initial denial of his STD claim, contending that Reliance had incorrectly determined his date of "disability," i.e., when Newsom could no longer "perform the material duties of his/her regular [o]ccupation." He asserted the true date of disability occurred the week of October 16, 2017—his last scheduled 32-hour work week—because his disability required him to work a reduced schedule (28 hours/week) after that week. Newsom further contended that the number of hours that he *actually worked* per week was irrelevant because his "regular" work week, i.e., his schedule set by Lereta, was full time (30+ hours/week) through the week of October 16, 2017. Upon further review, Reliance's STD claim examiner agreed, determining that Newsom's date of disability was October 23, 2017. Reliance thus paid Newsom STD benefits for the 26-week maximum STD benefit period (October 30, 2017 (Newsom's eighth day of disability, per the terms of the policy) to April 30, 2018).[2]

Newsom also applied for LTD benefits. But Reliance's LTD examiner denied Newsom's claim. As with Newsom's initial STD denial, the LTD examiner determined that Newsom's date of disability was January

---

[2] Newsom received partial disability benefits from October 30, 2017 to January 29, 2018, when he became unable to work at all. He received full STD benefits thereafter.

31, 2018, and that because Newsom did not work at least a 30-hour week (i.e., full time) in the weeks prior to that date, he was ineligible for LTD benefits. Newsom appealed the denial, but unlike his STD appeal, Reliance affirmed its decision to deny Newsom LTD benefits.

Newsom then filed this action, challenging Reliance's denial of LTD benefits under 29 U.S.C. § 1132(a)(1)(B) of ERISA. He also sought to recover attorneys' fees and costs pursuant to § 1132(g). In his complaint, Newsom contended that Reliance's interpretation of the "full-time" provision in its LTD policy was unreasonable because an employee would fall in and out of coverage based on the number of hours that employee actually worked each week. The parties agreed to a trial upon submission of documentary evidence,[3] and the district court ruled for Newsom, concluding that Reliance erroneously denied Newsom LTD benefits.

The district court's holding rested on its interpretation of the term "regular work week" as used in the definition of "full-time" in the LTD policy. The district court agreed with Newsom that "regular work week" essentially meant "normal, ordinary, standard work week" or "scheduled work week" and disagreed with Reliance's view that "actual hours worked" were determinative. To arrive at this conclusion, the district court conducted a textual analysis of the word "regular" using the Oxford English Dictionary definition ("Having the usual, typical, or expected attributes, qualities, parts, etc.; normal, ordinary, standard.") as well as the Merriam-Webster dictionary definition ("normal, standard").

The court noted several advantages to its "scheduled work week" definition, including that "it removes minor variations in actual hours worked from the eligibility determination and makes eligibility more

---

[3] This included the administrative record as well as trial briefing by the parties.

No. 20-10994
c/w No. 21-10519

predictable and ascertainable." Along these same lines, the court concluded that it "leaves the employer in control over which employees are full time and which are part time." Applying its definition, the district court determined that because Newsom was *scheduled* to work 32-hour weeks through the week of October 16, 2017,[4] he was a full-time employee for the purposes of the LTD policy regardless of whether he actually worked more than 30 hours each of those weeks.

The district court next resolved Newsom's date of disability. Newsom, consistent with the STD claim examiner, asserted that his date of disability was October 23, 2017. Reliance and the LTD claim examiner disagreed, asserting that Newsom's date of disability was January 31, 2018—the day after Newsom became unable to work at all. The district court again agreed with Newsom, finding that as of October 23, 2017, "Newsom was unable to perform the material duties of his job on a full time basis," and concluded Newsom was therefore partially disabled as of that date.[5] Based on these findings, the court without further analysis concluded "that the undisputed record show[ed] that Newsom is disabled and entitled to [LTD] benefits in the amount of $194,290.72."

Reliance timely appealed, contending (1) the district court erred in its interpretation of "regular work week" under the LTD policy, rendering its determination that Newsom was eligible for LTD benefits erroneous; (2) the district court erred in finding October 23, 2017, as Newsom's date of

---

[4] The district court explained that although "the exact date is unclear[,]" "Lereta placed Newsom on part-time status (scheduled <30 hours per week) on or around October 23, 2017."

[5] The court was also persuaded by Reliance's own determination that, for his STD claim, October 23, 2017 was Newsom's date of disability. The court concluded that based on the record, "it [wa]s undisputed that Newsom was partially disabled beginning October 23, 2017, and totally disabled beginning January 31, 2018."

7

disability; and (3) even if the district court was correct in finding that Newsom was eligible for benefits, it should have remanded the claim back to Reliance for an analysis of whether Newsom was disabled. We address these issues in turn.

## II.

We "review *de novo* a nondiscretionary denial of benefits challenged under ERISA, regardless of whether the denial is based on factual determinations or interpretation of the plan's language." *Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 280, 283 (5th Cir. 2021). Notwithstanding, the parties disagree as to how we should review the district court's factual findings made after trial of Newsom's claim on the documentary record. Newsom asserts that under Federal Rule of Civil Procedure 52(a), the district court's findings "must not be set aside unless clearly erroneous." Reliance, on the other hand, asserts that there are no Fifth Circuit decisions that discuss the standard of this court's factual review since *Ariana M.*, which overturned prior precedent and held that the district court should apply *de novo* review even "when [a plan administrator's] denial is based on a factual determination." *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 256 (5th Cir. 2018) (en banc). Reliance also refers us to *Pike v. Hartford Life and Accident Insurance Co.*, 368 F. Supp. 3d 1018 (E.D. Tex. 2019), a case that surveyed other circuits and applied *de novo* review of the ERISA claim in its entirety, including a factual review. But as Reliance's own brief concedes, *Ariana M.* refers to a district court's review of an administrator's factual findings, not to our review of the district court's factual findings. Accordingly, we will not set aside the district court's factual findings unless they are clearly erroneous. Fed. R. Civ. P. 52(a)(6).

No. 20-10994
c/w No. 21-10519

## III.

## A.

Reliance first contends that the district court erred in its interpretation of "regular work week" under the LTD policy. We disagree. In fact, we need not tarry long on this question because this court effectively answered it in *Miller*, *see* 999 F.3d at 285.

"When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists." *Id.* at 283 (quoting *Green v. Life Ins. Co. of North America*, 754 F.3d 324, 331 (5th Cir. 2014)). "We apply the rule of *contra proferentem* to ambiguous terms—construing them strictly in favor of the insured—but '[o]nly if the plan terms remain ambiguous after applying ordinary principles of contract interpretation.'" *Id.* (quoting *Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 725 (5th Cir. 2017)).

In *Miller*, we reviewed the same Reliance policy language at issue here and agreed with the Sixth Circuit that the term "full time" and its reference to a "regular work week," as set forth in the policy's "eligible class" provision, is ambiguous and should thus be interpreted in favor of the insured pursuant to the rule of *contra proferentem*. *Id*. at 285; *see also Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 894 (6th Cir. 2020) (construing Reliance's policy language). Following *Miller*, we again reject Reliance's assertion that "regular work week" has an unambiguous, narrow meaning: namely, the "hours actually worked." And, mindful of the rule that ambiguous language must be construed in favor of the insured, we conclude that the district court did not err by interpreting the term "full time" and its reference to a "regular work week" to mean the "scheduled work week" set by Lereta for Newsom.

No. 20-10994
c/w No. 21-10519

**B.**

Likewise, the district court did not err in finding October 23, 2017, as Newsom's date of alleged disability.[6]  As discussed above, we review the district court's factual findings for clear error. Fᴇᴅ. R. Cɪᴠ. P. 52(a)(6). This is a high standard, meaning "[w]e will not conclude that a district court's finding of fact was clearly erroneous based only on our belief that, had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently and made a different finding." *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (internal quotation marks and citation omitted). We will only reverse "if a review of all the evidence leaves us with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks and citation omitted).  Reviewing the record here, we are not left with such a conviction.

Based on the relevant policy definitions, quoted *supra* in Part I, the district court concluded that Newsom was Partially Disabled as of October 23, 2017, the date Lereta cut Newsom's hours to 28 hours per week, because he was unable to perform the "material duties" of his job on a "full-time basis."  The court also concluded that the Elimination Period started on October 23, 2017, and that Newsom was thus Partially Disabled during the Elimination Period.[7]  Finally, the court concluded that Newsom had a

---

[6] By reaching this conclusion, we are not agreeing or disagreeing with the district court that Newsom was disabled, as defined by the LTD policy; as discussed *infra*, we conclude that issue was not yet ripe for the court to decide.  Nonetheless, determining the *date* of Newsom's alleged disability is necessary because it is intertwined with Newsom's eligibility determination.

[7] The policy defines "Elimination Period" as "a period of consecutive days of Total Disability, as shown on the Schedule of Benefits page, for which no benefit is payable. It begins on the first day of Total Disability."  The Schedule of Benefits page provides that the Elimination Period for employees working outside of the State of California, such as Newsom, is "180 consecutive days of Total Disability."

Residual Disability, and therefore a Total Disability, as of October 23, 2017, making that date Newsom's date of alleged disability. The court noted that this finding was "consistent with Reliance's own determination in connection with Newsom's STD claim," which it found "very probative." In other words, the court viewed Newsom's alleged disability as progressive, not as two independent losses.

Reliance counters that its STD decision should have no bearing on the separate LTD decision. And in a somewhat circular argument, Reliance contends that Newsom's disability date could not be October 23, 2017, because his time records reflect that he worked 30 or more hours, i.e., full time, during a few subsequent weeks. But this contention again presumes that "regular work week" as used in Reliance's LTD policy means "hours actually worked." We rejected that contention above, and Reliance's argument fails in this instance for the same reasons. Regardless, accepting *arguendo* Reliance's position that the district court should not have considered the STD decision, the district court reached the same conclusion by applying the LTD policy language to the facts before it. We find no clear error in the district court's analysis.

## C.

Reliance last contends that even if the district court was correct in finding that Newsom was eligible for benefits, it should have remanded the claim for Reliance to develop a full factual record and make the initial decision on whether to award benefits, and in what amount. Newsom, on the other hand, contends that "[r]emand would amount to an impermissible 'second bite at the denial apple'" and was, and is, unnecessary due to the district court's *de novo* standard of review. We ultimately agree with Reliance that remand is necessary in this case.

No. 20-10994
c/w No. 21-10519

Newsom primarily cites *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), in support of his position that we should decline to order a remand to Reliance for further record development. In *Vega*, the court encouraged parties to make their record prior to coming to federal court and stated that "allow[ing] the administrator another opportunity to make a record discourages this effort." *Vega*, 188 F.3d at 302 n.13.    However, *Vega*'s applicability to this case is more limited than Newsom's reading, as *Vega* itself suggests:

> In some special circumstances a remand to the administrator for further consideration may be justified. [In *Vega*], however, the only issue in dispute was whether a material misrepresentation was made. [The *Vega* court] decline[d] to remand to the administrator *to allow him to make a more complete record on this point*.

*Id.* (emphasis added).    Here, unlike in *Vega*, a remand to the administrator would not be to make "a more complete record" on whether Newsom was *eligible* for LTD benefits.    Rather, a remand would be for a *merits determination* about Newsom's entitlement to LTD benefits—a separate issue, and one on which Reliance did not develop a record after finding Newsom ineligible for LTD benefits.[8]

---

[8] Newsom cites other cases for the general proposition that piecemeal litigation is discouraged.  However, these cases are also distinguishable because, unlike the case at hand, they concern matters in which the plan administrators had previously addressed the grant or denial of benefits on the merits.  That said, we are sympathetic to Newsom's concern that remand will prolong his wait for benefits, and we accordingly emphasize that the purpose of remanding his claim is *not* to relitigate Newsom's eligibility for LTD benefits.  Instead, on remand Reliance should expeditiously evaluate the record as to the merits of Newsom's LTD benefits claim—i.e., as discussed *infra* above the line, Reliance should determine whether his inability to work resulted from "Injury or Sickness" as defined in the policy and award benefits as warranted.  And consistent with our precedent,

No. 20-10994
c/w No. 21-10519

*Schadler v. Anthem Life Insurance Co.*, 147 F.3d 388 (5th Cir. 1998), cited by Reliance, is more analogous to this case. In *Schadler*, the plan administrator initially denied the insured's claim based on coverage eligibility. 147 F.3d at 395. After the administrator retreated from its initial position that the insured lacked coverage, we instructed the district court to remand the case to the plan administrator "for the development of a full factual record and for the making of the decision on whether to grant or deny benefits . . . ." *Id.* at 398.

The distinction that keeps *Schadler* from simply settling this issue for Reliance, however, is that the plan in *Schadler* "vest[ed] the administrator with the discretion to interpret its terms[,]" such that the district court was required to review the administrator's decision for abuse of discretion. *Id.* at 394–95. Here, by contrast, we address a nondiscretionary plan, and the district court was required to review the administrator's decision *de novo*. *See Ariana M.*, 884 F.3d at 256. This is a notable distinction because the standard of review played at least some role in the *Schadler* court's decision to remand to the administrator. *See Schadler*, 147 F.3d at 398 ("Because Defendants denied that coverage ever existed until the matter was before the district court, the administrator never had occasion to exercise any discretion to interpret the terms of the Plan.").

According to Reliance, remand is nonetheless proper here because "the disability issue did not ripen into an apple ready to be bitten until after an initial finding of eligibility." Reliance offers *Pakovich v. Broadspire*, 535 F.3d 601 (7th Cir. 2008), as persuasive authority for its contention that

---

Reliance will only have one opportunity to make a disability determination on the merits. *Vega*, 188 F.3d at 302 n.13.

remand is warranted "when the plan has not made a decision on an element of the claim." In *Pakovich*, the Seventh Circuit reasoned that

> it is unnecessary for plans to hedge their bets on a possible reversal on appeal by requiring that, after a plan has already found that an employee does not qualify for disability benefits under the "own occupation" standard, it also must determine whether the employee is disabled from "any occupation."

*Id*. at 605. We find this reasoning persuasive.

The district court declined to follow *Pakovich*, reasoning that "[h]ere, the question before the Court—own occupation benefits—is the precise question Reliance decided at the administrative level, and this Court's review of that decision is de novo, not deferential." But the record indicates that Reliance only made an *eligibility* determination, namely that Newsom was not eligible for LTD benefits because he was not a full-time employee. Reliance did not further evaluate the record to reach the merits of Newsom's claim or otherwise make an alternative decision beyond its eligibility determination.[9] This is a distinction that makes all the difference: Where the question for *eligibility* is whether Newsom was an "active, full time employee of LERETA, LLC," the question for determining *Total Disability* is whether Newsom "*as a result of an Injury or Sickness* . . . cannot perform the material duties of his . . . Regular Occupation." (Emphasis added.) Indeed, the

---

[9] Although the parties agreed to a trial upon submission of documentary evidence, the record is clear that Reliance's agreement was limited to trying Newsom's challenge to its decision regarding Newsom's eligibility for LTD benefits. In the district court, beginning with its answer to Newsom's complaint, Reliance framed its view of the scope of the trial: "no decision was made on whether Plaintiff was Totally Disabled because he was not eligible for coverage under the policy"; "Plaintiff's claim was denied due to lack of coverage and Reliance Standard was therefore not required to consider whether he was Totally Disabled under the [LTD] plan . . . . [O]nly in the event that coverage is established—which is denied, remand to Reliance Standard to consider the question of disability is necessary."

district court did not connect Newsom's inability to work after October 23, 2017—which we agree gave rise to his eligibility for benefits—with his "injury" or "sickness" as required to support a conclusion that Newsom was disabled under the policy. Instead, the district court appears to have conflated the issues of eligibility and disability, which are in fact distinct.

This perhaps also explains why the district court summarily concluded "the undisputed record shows that Newsom is disabled and entitled to benefits in the amount of $194,290.72." The court provided no explanation for how it reached the amount of disability that Newsom should be awarded beyond noting that "there is no evidence of any offset or reduction to which Reliance is entitled." In ERISA cases judicial review is limited to the administrative record, *Katherine P. v. Humana Health Plan, Inc.*, 959 F.3d 206, 207–08 (5th Cir. 2020), and the record tried by the district court in this case was limited to Reliance's *eligibility* determination. Although that factual record contains medical records Newsom submitted during Reliance's evaluation of his claim, the merits evidence is at best incomplete and thus undermines the district court's benefits determination.

But even if that were not the case, the court's benefits determination does not fully square with the record. For example, the record reflects that Newsom's own treating physician indicated that Newsom was unable to work by the end of January 2018, but estimated that Newsom *could return to work by August 1, 2018*. This is not addressed in the district court's order.[10] Further, although the district court did not state as much, the $194,290.72

---

[10] Along these same lines, the policy provides that other income benefits were to be subtracted from the "benefit amount payable" to the policy holder. But as noted in Reliance's briefing, "[t]wenty-four months of benefits would have ended on April 20, 2020, using the onset date selected by the district court." Because the administrative record closed on May 17, 2019, the district court could not have considered any potential offset or reduction in benefits occurring thereafter.

awarded appears to equate to $6,699.68 per month for 29 months (May 2018 to September 2020), presumably based on Newsom's calculation set forth in his trial briefing.[11] Assuming this is true, it conflicts with the policy provision that after a monthly benefit has been paid for 24 months, there must be a finding that "an Insured cannot perform the material duties of Any Occupation"; the district court expressly stated that it did "not address 'any occupation' disability and express[ed] no opinion regarding future benefits."

At the end of the day, however, squaring these circles is secondary to the question of whether Newsom was disabled "as a result of an Injury or Sickness" as defined by the LTD policy, and therefore entitled to LTD benefits. An administrative record answering these questions was simply not before the district court, irrespective of its *de novo* review. Once it determined that Newsom was not eligible for LTD benefits, Reliance stopped. Once the district court determined that Newsom was in fact eligible for LTD benefits, and the date on which his eligibility began, it should have stopped as well and remanded the case for Reliance to make the separate disability determination.

## IV.

As a final matter, Reliance separately appealed the district court's order entered April 26, 2021, granting Newsom's motion for attorney's fees, which was filed after this appeal was noticed. *See* Notice of Appeal, at 1, *Newsom v. Reliance Standard Life Ins.*, No. 21-10519, (May 20, 2021). The second appeal was dismissed by the Clerk on July 15, 2021, for failure to file a brief and record excerpts. Reliance filed a motion to reinstate its appeal of

---

[11] Newsom alleged that he was owed a monthly LTD benefit of $6,699.68 per month—60% of his $11,166.13 monthly earnings. Newsom further alleged that the administrative record contained no evidence of income that would create an offset under the terms of the policy.

No. 20-10994
c/w No. 21-10519

the attorney's fees award, consolidate that appeal with this one, and adopt the briefs and argument submitted in this case for both appeals. In the light of our conclusion that this case should be remanded for a determination by Reliance of LTD benefits to which Newsom is entitled, we conclude that the district court's order awarding Newsom attorney's fees must likewise be revisited on remand. By separate order entered in appeal No. 21-10519, we accordingly grant Reliance's motion to reinstate that appeal and consolidate the cases for the purpose of remanding Newsom's claim, including his entitlement to attorney's fees, for further proceedings. We express no opinion on the merits of Newsom's motion for attorney's fees pending resolution of his LTD benefits claim.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of the district court as to Newsom's eligibility for LTD benefits and Newsom's date of disability; we VACATE the judgment of the district court as to Newsom's entitlement to LTD benefits; we likewise VACATE the district court's order granting Newsom's motion or attorney's fees; and we REMAND to the district court with instructions to remand Newsom's claim to the administrator for further proceedings consistent with this opinion.

AFFIRMED in part; VACATED in part; REMANDED.